SICE *against* CUNNINGHAM and M'CORMICK.

ASSUMPSIT, by the plaintiff, as endorsee, against the defendants, as endorsers of a promissory note, dated at *New-York, Feb.* 15, 1819, made by one *Kumbel*, in favour of, and endorsed by the defendants, for $1000, payable on demand, and expressed to be for value received. On the trial of the cause, the following facts appeared: All the parties, both at the date of the note, and at the time when payment was demanded and notice given to the endorsers of demand and non-payment, resided in the city of *New-York.* The note was executed under the following circumstances: *Kumbel* requested of the plaintiff, the loan of $2000, on his (*K's*) note, at one year, to be endorsed by the defendants. The plaintiff agreed to make the loan, but he could then advance only $1000, and hoped, within 2 or 3 weeks, to be in funds to make the whole loan, from the sale of certain mortgaged premises. The plaintiff and *Kumbel* agreed, therefore, that the note in question should be taken, payable on demand, until the other $1000 could be furnished. *Kumbel* was the brother-in-law of *M'Cormick*, one of the defendants. It was further agreed, between the plaintiff and *Kumbel*, that when the other $1000 should be procured. the note in question should be taken up, and a new note procured, for the whole amount, to be made by *Kumbel* and endorsed by the defendants, at one year, with interest ; but it was uncertain when the plaintiff would receive the additional sum. *Kumbel*, on this understanding, executed the note, and himself procured the defendants to endorse it. The plaintiff had, twice before this, lent money to *Kumbel*, on his note endorsed by the defendants, to wit, $1000 at one time, and $600 at another time, which had been re-paid. The notes, for these sums, were at one year. *Kumbel* had served his time with the defendants, but was at the time of giving these notes in business for himself. At the date of the note in question, *Kumbel* was in good credit and business, as a

A promissory note, payable on demand, is due presently ; and in order to charge the endorser of such a note, payment must be demanded of the maker, and notice of non-payment given to the endorser, within a reasonable time after the date.

What is a reasonable time, when the facts are ascertained, is a question of law, to be determined by the court.

Five months is an unreasonable delay, where all the parties reside in the same city.

That the note is given for money lent, and payable on demand, with interest, does not take it out of the general rule.

Nor will an agreement, at the time of executing the note, between the indorsee and the maker, that the money shall not be deman-

UTICA,
August, 1823.

SICE
v.
CUNNING-
HAM.

ded at the time when the note purports, on the face of it, to be payable, excuse a delay of the demand, in order to charge the indorser, beyond the ordinary time; especially where the indorser is not a party to the agreement.

Indeed, parol evidence of an agreement to pay at a different time than that which the note imports, is inadmissible, within the rule, that the legal effect of a written contract cannot be varied by parol evidence.

An offer by an indorser to give his own note, in satisfaction of the indorsed note, is not a waiver of demand and notice, unless such offer is accepted by the holder.

To make a promise of payment operate as a waiver of demand and notice, the holder must shew affirma-

merchant, but stopped payment about the 23d day of July, 1819, on which day the note in question was presented, and demanded of him, by a notary, protested, and notice thereof given to the defendants. The plaintiff also gave in evidence a judgment, by confession, in this Court, docketed July 21, 1819, in favour of the defendants, against Kumbel, for $4539,66, expressed, in the specification, to be for various sums of money lent, by the defendants, to Kumbel, at various dates, from March 13th, 1819, to July 19th, of the same year. Mount, a witness for the plaintiff, testified, that shortly after the commencement of this suit, he saw M'Cormick, one of the defendants, and asked him if he had settled with Sice, the plaintiff; to which he replied, that " we (meaning the defendants) offered him our own note, and he would not take it, without an endorser, and he has gone and sued us. Now I will keep him out of the money as long as God will let me." This was 3 or 4 days after the protest. He seemed vexed, and said nothing about a compromise. It appeared, that when notice of demand and non-payment was given, which was served upon M'Cormick only, he made no objection that the demand was not made in time ; nor did he say any thing, directly or indirectly, about it.

The defendants' counsel then insisted, that it was the province of the Court to decide on the reasonableness or unreasonableness of time, for a note on demand to run, before it was demanded of the maker, in order to charge the endorser ; and that the case of a promissory note, on demand, was not distinguishable from a bill of exchange, payable at sight, which, it was well settled, should, in order to charge the drawer or endorser, where the parties live contiguous to each other, be presented in a short time after its date. It was contended, by the plaintiff's counsel, that this note did not stand upon the footing of ordinary commercial paper; that it was deposited for a loan of money, and drawn payable, with interest; and, therefore, the usual strictness in regard to presentment and notice was not required. The Judge then stated to the counsel, after recapitulating the leading features of the testimony, that he had no doubt, that five months and a half, the time given on this note, was an unreason-

able length of time to be given to the drawer of a note payable on demand, in order to charge the endorser, where the note had been negotiated in the ordinary way; but, under the circumstances of this case, he should charge the jury, that they had a right to consider the subsequent declarations proved to have been made by *M'Cormick*, connected with the other facts in the case, and to determine, upon the whole testimony, whether or not the defendants were all the while cognizant of the understanding which existed between the maker and plaintiff. To this opinion the counsel for the defendants requested the Court to note their exception. The cause was then summed up, by Mr. *Emmett* for the defendants, and Mr. *Hoffman* for the plaintiff, and his Honour, after recapitulating the testimony, charged the jury upon the points of law, agreeably to his opinion, as above expressed. The jury found for the plaintiff, for $1202,22. The defendants' counsel had the permission of the Court to make a case, with liberty to turn the same into a bill of exceptions.

*H. Ketchum*, for the defendants, now moved for a new trial. He said the endorsers were clearly discharged by the laches of the holder. There being no dispute about the facts, this is a question of law, to be determined by the Court.(*a*) The time given was unreasonable. It is now well settled, that a note, payable on demand, or at sight, must be demanded immediately, or as soon as the circumstances of the case will admit.(*b*) It will be said, however, that here was an understanding, that the note being for a loan, was to run for a year. Our answer to this is, that whatever arrangement might have been made between the plaintiff and *Kumbel*, it never reached the defendants and they, of course, cannot be affected by it. Nor, if this fact had been known to them, would it at all vary the legal obligation of the plaintiff as to the demand and notice. Its being a note, for the maker's accommodation, makes no difference. In *Jackson* v. *Richards*,(*c*) the same point was taken, and overruled. The Court said, " An endorsement, for the credit of the drawer, is not unusual, in the ordinary course of business ; but it would be inconvenient and injurious, to dispense with the

UTICA.
August, 1828.

SICK
*v.*
CUNNING-
HAM.

tively and clearly, that the indorser promised with full knowledge that he had not been charged as endorser by a regular demand and notice.

(*a*) *Tindall* v. *Brown*, 1 *T R.* 167. *Bryden* v *Bryden*, 11 *John.* 187. *Ch. on Bills*, 345, *last ed.*
(*b*) *Id.* 345 to 353, *and cases there cited.* *Field* v. *Nickerson*, 13 *Mass. Rep.* 131.

(*c*) 2 *Caines*, 343.

UTICA,
August, 1823.

SICE
v.
CUNNING-
HAM.

(d) 7 John.
361.
(e) 4 Cranch,
141.
(f) 13 East,
187.

(g) Agan v.
M'Munus, 11
John. 180.

settled rule of the previous demand and notice, in all such cases." And, in *Brown* v. *Mott*,(d) the Court say, "An endorser for the accommodation of the maker, is entitled to all the privileges of an endorser, by being fixed in due season." The same point was decided in *French's Executrix* v. *The Bank of Columbia.*(e) Nor does it vary the case, that the consideration was a loan of money. We are aware that *Smith* v. *Beckett*,(f) will be cited and relied upon. But, in that case, the maker was insolvent when the note was given.(g) He was not at all relied upon, and the note was given to enable him to commence business. It is, however, a sufficient answer to that case, that it is overruled in this Court, by the decisions to which we have referred.

The evidence of the partial loan, and the understanding that the demand was to be postponed, would not require the delay of a moment, even as between the endorsee and maker. The plaintiff did not, in fact, tie up his hands for a single day. The note must speak for itself, and could not

(h) Thompson v. Ketcham, 8 John. 189.

be varied by parol evidence.(h) On the other hand, if the agreement had any effect, it must have been to delay the payment for the year stipulated. In this view, the action was prematurely brought, and the plaintiff should have been nonsuited.

The declaration of *M'Cormick* was not urged upon the trial, as reviving the defendants' liability. If that effect is claimed here, we object to it, as a loose declaration made to a third person, and is within the case of *Miller* v. *Hack-*

(i) 5 id. 375.

*ley*,(i) where a similar ground was taken. This was put down by the Court, who said, " It would be dangerous to fix an endorser without notice, and perhaps without knowledge of the laches of the holder, upon such loose conversation with a third person." Nor does it appear that *M'Cormick* was at all acquainted with the laches of the holder. A promise, to be valid, must have been with full knowledge of this fact, which it lies with the plaintiff to shew affirmative-

(j) id. Trimble v. Thorn, 16 id. 152.

ly.(j) Besides, if it can be called a promise, it was upon a condition not complied with, and therefore not binding.

The Judge charged the jury erroneously, in directing them, that the note was not negotiated in the ordinary way, and, consequently, not subject to the usual strictness in regard to presentment and notice. That such was his meaning, is necessarily implied in the introduction to his charge ; and he improperly leaves *M'Cormick's* declaration to the jury, to be considered in connexion with other facts, with a view to determine upon the whole testimony, whether or not the defendants were cognizant of the understanding between the plaintiff and *Kumbel*. A jury ought not to be permitted to infer from circumstances, a state of things excusing a resort to the maker. This, as before remarked, is a question of law, and belongs to the Court.

But if properly left to the jury, the verdict is clearly against evidence. *M'Cormick's* declaration amounts to nothing ; and there are no other circumstances in the cause, which amount to any thing, as proof of the defendants' knowledge. It surely cannot be contended seriously, that the relationship between the maker and one of the defendants, is to make a part of such proof. As to the judgment confessed, it strengthens the defendants' case. It was taken on the 19*th* of *July*, a few days before the failure of *Kumbel*, to secure demands entirely distinct from the one in question here. The defendants supposed the note paid, or themselves discharged, and took no precaution against it.

*J. O. Hoffman*, contra. 1. The demand and notice were in reasonable time. This question has frequently arisen, both in this country and England, and no case has yet decided *five months* to be too great delay. In *Furman* v. *Haskin*,(*k*) the delay was 18 months and holden too long ; in *Sanford* v. *Mickles et al.*(*l*) 5 months delay, there being endorsements, was holden not unreasonable. In *Losee* v. *Dunkin*,(*m*) the delay was about 10 or 12 weeks ; and in *Agan* v. *M'Manus*(*n*) it was 8 or 9 months. The rule is truly laid down in the two last cases. It is, that the demand should be made and notice given *in a reasonable* time. It is not like a bill payable at sight; for it carries interest from the date. Indeed, all the authorities cited, place the reasona-

(*k*) 2 *Caines'*
*Rep.* 369.
(*l*) 4 *John.*
2 24.
(*m*) 7 *John.*
170.
(*n*) 11 *id.*
180.

(o) 13 East,
187.

(p) 13 Mass.
Rep. 131.

bleness of the time upon the circumstances of the case ; and one distinguishing circumstance of this case is, that the note was given upon a loan of money, which, in the city of *New-York*, when the loan is private, or not at the bank, is well known to be ordinarily for 6 months, or a year. *Smith* v. *Becket*,(o) was put on the ground of a loan, and the delay would have been justified for that reason, had there not been a renewal of the advance. Had notice of the demand been given in that case before suit, the plaintiff would, doubtless, have recovered. Had this question depended merely upon the face of the note, I agree, that it would have been for the Court to pronounce the law : depending, however, upon circumstances, it was properly put to the jury. *Field* v. *Nickerson*,(p) I am aware, appears to be against us. The demand was there delayed for 8 months after the date. The Judge charged, that the circumstance of the note being for a loan made no difference ; the usual time of credit, on a loan of money, in *Boston*, where that loan was made, as appears from the charge of the Judge, was shorter than in the city of *New-York*. But, even in that case, the Court finally place it on the ground, that the jury had found the demand not to have been made in a reasonable time. This was a mistaken view of the case. The jury expressly referred the question to the Court, to say, on their part, whether the time was reasonable or not. The case is inconsistent with itself, but it supports the distinction I have taken, that where the time is to be judged of from the face of the note, the Court are to decide ; if from extrinsic circumstances, it belongs to the jury.

2. The defendants knew the arrangement between the plaintiff and the maker. The plaintiff was not in funds at the time of the loan. The note was taken on demand for $1000 lent, and the same sum was to be made up afterwards, a few weeks being in contemplation of the parties. The defendants must have inquired into so unusual a circumstance, as this note's being payable on demand. There had before been loans between these parties, and notes given and endorsed by the defendants, at certain pe-

riods of credit. All live in the same city, and one of the defendants is connected in the family of the maker. The conversation of *M'Cormick*, and his silence when notice of the demand was given, connected with the other circumstances mentioned, justify the inference that he was fully cognizant of the arrangement for the loan. He knew the day of the demand, and when the notice was given. It is said, that if the agreement had any effect, it suspended the right to demand for a year ; but this must also be left to the circumstances. On the maker's becoming insolvent, it was our duty immediately to make the demand, and give notice, with a view to obtain actual payment, or a substituted note for the year, to which we were entitled.

The objection, that the delay has been too much, rests merely upon the face of the paper ; but here are circumstances to excuse the delay, which it was proper to submit to the jury ; and in doing so, we pursue the case of *Field* v. *Nickerson*, so much relied upon by the other side. The jury have pronounced upon these circumstances, and the law does not require that their verdict should be disturbed. Among other circumstances, the judgment by confession is in evidence, given only two days before the maker's insolvency. Some of the items correspond very nearly with the amount of the note. The specification mentions a loan ; and the defendants ought to have been put to explain, whether it was to secure this, or any other debt. After notice of protest, the defendant, *M'Cormick*, admitted his liability.

*Fessenden*, in reply. If the Court do sustain the verdict, it must be upon strict principles of law ; for the equity of the case is clearly with the defendants. The plaintiff claims, not upon the usual demand and notice, but upon equitable circumstances, excusing his delay. There is not an instance where the ordinary strictness has been dispensed with, except under the equitable circumstances of the case. *Sanford* v. *Mickles*(q) is an example. So, where the note is for the endorser's accommodation, or where he has misled the endorsee, by saying that he need not give notice, for he

UTICA,
August, 1823.

SICE
v.
CUNNING-
HAM.

(q) 4 *John.* 224.

would consider himself liable, and the like.  This note was for the accommodation of the maker.  Though the defendants might have known this, yet there is no evidence that they knew how it was to be used ; whether for the purpose of a loan or a cash purchase of goods ; nor is there evidence, that they even knew it was for the maker's accommodation.  As to the judgment, it is evident that it was for actual loans, and had nothing to do as an indemnity against this endorsement.  Having suspicions of the maker's insolvency, they had no motives to falsehood, but were interested to have their specification true, in order to avoid attacks from other creditors.

The note, then, being negotiated in the ordinary way, it must be presented in a reasonable time, or the endorsers are clearly discharged by the delay.  This is a question of law.  The jury are to find the time, with the facilities of demand and notice, such as the distance between the parties, &c.  When these are found, the Court pronounce the law, as in *Tindall* v. *Brown.*(r)  The only question presented to the jury was, whether, from *M'Cormick's* conversation, connected with the other circumstances of the case, the defendants fully understood the cause of delay.  In *Losee* v. *Dunkin,* which was a country cause, the Court held two and an half months an unreasonable delay.  Surely, greater expedition is required in the city, where the circumstances of people are more fluctuating.  Indeed, the Judge who tried the cause, expressed no doubt that the delay would have been unreasonable, had there not been circumstances from which, in his estimation, it was proper for the jury to determine whether it was not taken out of the general rule.  All the cases in our books are between the maker and the payee, on an effort by the former to be let in for the purpose of proving payment, or setting off a cross demand ; and though there may be some analogy between those cases and the present, it is not complete ; for there the maker might have protected himself by demanding the note, and seeing his set off or payment endorsed.

The only circumstance alluded to by the Judge, was the conversation.  This he connects with the other circumstan-

(r) 1 *T. R.* 167.

ces, without naming them ; and, it is evident, that the plaintiff intended to retain the privilege of demanding at any time, and ought to be subjected to the ordinary duties of an indorsee. When a Judge, at the trial, takes up illegal testimony, and refers it to the jury, we may impeach his charge on a motion for a new trial, though we did not object to its admission on the trial. In this case, a parol agreement, extending the time of payment, being inadmissible, though we did not resist it as incompetent at the trial, yet, as the Judge misconstrued this evidence in his charge to the jury, we may make the objection here. It is not enough, that the defendants knew of the circumstances which caused the delay. To make it affect their right, they should have assented to it. In *Smith* v. *Becket*, the indorser was a party to the delay. An indorser may know of the maker's insolvency, but this is *not enough to excuse notice.* Indorsers are conditional sureties, and have a right to demand strict terms.

A note payable *on demand*, and *at sight*, stand on the same footing. The circumstances of excuse in the one case are good in the other ; and it is well understood, that a note, payable on sight, must be demanded presently. I think what the Court say, in *Smith* v. *Becket*, is equivalent to a declaration, that even if notice had been given, no recovery could have followed. At any rate, there is nothing to preclude such an opinion. The first point of a total want of notice, was the strong one, and the only point on which the cause turned.

If the agreement, in this case, was not to delay for a year, which would make the action premature, then there is no evidence of an intention to delay for any specific time, whether 24 or 48 hours, or 6 months ; and the note is thus left on the ordinary footing of one payable on demand, unaffected by circumstances.

WOODWORTH, J. It does not appear that the defendants had any knowledge of the negotiation, between the maker of the note and the plaintiff, nor the terms on which the money was loaned. Their liability depends on the question— has the plaintiff, within a reasonable time, demanded pay-

ment of the maker, and given notice to the endorsers ? *M*<sup></sup>*Cormick* stated to *Mount*, that they offered their own note, but the plaintiff would not take it without an endorser. This does not establish a liability. The offer to give a note may have arisen from a belief that regular notice had been given. What was said in *Miller* v. *Hinckly*, (5 *John.* 385) is applicable here : " It would be dangerous to fix an endorser, without notice, and perhaps without knowledge of the laches of the holder, upon such loose conversation with a third person." If the demand and notice proved in this case, are not sufficient to charge the defendants, it is the same thing as if no notice had been given. It is well settled, that if the endorser, with full knowledge of the fact, makes a subsequent promise, it is a waiver, and he is liable ; but it must be shown by the plaintiff, affirmatively and clearly, that the defendant knew, when he made the promise, that he had not received regular notice. An endorser may believe that due notice has been given, and under an ignorance of the facts, consider himself liable, when he is not. (*Trimble* v. *Thorne*, 16 *John.* 154. 12 *John.* 423. 8 *John.* 384.) In *Agan* v. *M'Manus*, (11 *John.* 180) the defendant made a similar offer to give his own note. It was there held, that such offer was qualified or conditional, and having been rejected by the plaintiff, was not binding upon the defendant. The question to be decided is a question of law, arising on facts not disputed. The charge was, therefore, incorrect, in submitting it to the jury. It was, indeed, a question of fact, whether the defendants were acquainted with the agreement between the maker of the note and the plaintiff, but there is no evidence on this point. The whole transaction is perfectly consistent with entire ignorance on the part of the defendants. It was, therefore, manifestly incorrect, to submit such a question to the jury, in the decision of which, if found for the plaintiff, they must have substituted conjecture for proof. In the view I have taken, it becomes an immaterial inquiry, whether it was intended between the maker and plaintiff, that the money should not be demanded before the expiration of a year. The defendants, in the absence of knowledge, must be governed by the written contract. Be-

sides, there is a sound legal objection to this parol proof. The note is payable on demand. The effect of the understanding, between the plaintiff and maker, is to make it payable at a future period. In *Thompson* v. *Ketcham*, (8 *John.* 189) the note, on the face of it, was payable immediately. The Court held, that the time of payment is part of the contract. And if no time be expressed, the law adjudges that the money is payable immediately. When the operation of a contract is clearly settled, by general principles of law, it is taken to be the true sense of the contracting parties; and it is against established rules, to vary the operation of a writing, by parol proof, which goes to alter in a material degree its effect, by making it payable at some distant and undefined period. The question, then is, whether a demand was made and notice given within a reasonable time. There is no precise time at which such a note is to be deemed dishonoured. It must depend on the circumstances of the case, and the situation of the parties. In *Losee* v. *Dunkin*, (7 *John.* 70) the note was negotiated two months and a half after its date; and, in a suit by the holder, the maker was allowed to shew payment to the original payee. No particular circumstances were disclosed. The question seems to have been decided on the facts, that the note was dated on the 16*th January* and the transfer made the 3*d April*. The note being dishonoured, at the time of the transfer, or over due, so as to allow the defendant the benefit of a set off, against the payee, necessarily proves, that a demand, made two and a half months after the date of the note, is not within a reasonable time, so as to charge the endorser. That there is nothing in the circumstances of the cause before us to exempt it from the operation of this rule, has already been shewn. The case of *Sanford* v. *Mickles* & *Furman*, (4 *John.* 224) decides nothing in favour of the plaintiff. It went on the ground, that several payments being endorsed on the note, before the transfer, and the last but a few days before, the plaintiff, when he took the note, had a right to claim the balance, after deducting the payments, which the defendant was not permitted to controvert, in as much as it might be presumed that all the payments were entered on the note. This question was ably

examined in *Field* v. *Nickerson*, (13 *Mass. Rep.* 131.) I fully concur in the doctrine there laid down. The precise time in which a demand must be made, will depend on the facts of each particular case, and may vary according to the circumstances and situation of the parties. It was held, that eight months was an unreasonable time, and that a much shorter time would be sufficient to produce the same result; that the correct doctrine was, to consider a note payable on demand, like a bill payable at sight, which must be presented to the drawer as soon as can conveniently be done. It discountenances the doctrine, that the endorser is liable, if it appear, from the circumstances and situation of the parties, that more time has elapsed than is reasonable and necessary for making a demand. The plaintiff here made no demand for upwards of five months, although all the parties lived near each other. The verdict must be set aside, and a new trial granted, with costs to abide the event.

SUTHERLAND, J. This case resolves itself into two points :

1. Whether the indorser of a promissory note, *payable on demand, with interest,* is discharged from his liability, where a demand of payment was not made of the maker and notice of non-payment given to the indorser, until five months after the date of the note.

2. Admitting, that, as a general rule, such delay would discharge the indorser—are the peculiar circumstances of this case such, as to exempt it from the operation of that rule ?

It is a general rule, that a note payable on demand, must be presented for payment ; and if not paid, notice thereof given to the indorser, within a *reasonable time,* or he will be discharged. (*Chitty on Bills, Story's ed.* 197. *Furman* v. *Haskin,* 2 *Caines' Rep.* 369. *Sanford* v. *Mickles* & *Furman,* 4 *John. Rep.* 224. *Field* v. *Nickerson,* 13 *Mass. Rep.* 131.)

What is a reasonable time, when the facts are ascertained, *is a question of law.* (*Tindall* v. *Brown,* 1 *Term Rep.* 167. 2 *Caines' Rep.* 369.)

I am of opinion, that where a note, payable on demand, is made and negotiated in the ordinary way, without any agreement or understanding among the parties, as to the time when it is to be paid, in judgment of law, it ought to be considered as due, *within* the period of five months, and, consequently, if payment is not demanded of the maker within that time, the indorser will be discharged. It is to be presumed from the fact, that payment *may be immediately* demanded upon such a note, that the indorser contemplated a short credit, when he put his name upon it, and that this was the condition upon which he agreed to be responsible. If a prolonged credit had been intended by the parties, he had a right to suppose that it would have been expressed upon the face of the instrument—that the maker would not have given to the payee the power of *immediately* calling upon him for payment, if he had not *expected soon to be called upon*—that the payee would not have exacted such an authority, if it had not been his purpose *soon to exercise it.* Now, five months is, by no means, a short credit, upon negotiable paper. It is nearly double the ordinary bank credit, and the indorsers have a right to say that the condition upon which they agreed to be responsible has not been fulfilled, and that they are, therefore, discharged.

In *Hendricks* v. *Judah,* (1 *John.* 319,) the action was brought by the endorsee against the *maker* of a note, payable on demand. The suit was commenced within a year after the date of the note, *but there was no evidence to show at what time it was indorsed to the plaintiff.* The Court say, they will intend that it was endorsed soon after its date, and therefore before it was due, and on that ground, they refused to permit the defendant to set off a demand against the payee. This case, therefore, decides nothing in relation to the point before us.

In *Furman* v. *Haskin,* (2 *Caine's Rep.* 369,) the note was endorsed 18 months after its date, which was held to be after it became due, and to subject it to all the equities between the original parties. In *Losee* v. *Dunkin,* the note

was negotiated two months and a half after date, which was considered out of time. But the Court say, " the particular circumstances of the case are not before us ; and they might have been such as to justify the conclusion, that the note was dishonoured when it was assigned." From this case it is to be inferred, that where the circumstances are not peculiar, two months and a half are not an unreasonable time to permit a note, payable on demand, to run. But the note in this case, run more than double that time. (Vid. *Field* v. *Nickerson*, 13 *Mass. Rep.* 131.)

2. Are there, then, any circumstances in this case, to take it out of the operation of the general rule ? If knowledge had been brought home to the endorsers, of the agreement between the maker and the endorsee, that the note was to run until the sale of the mortgaged premises, when *Kumbel* was to have another thousand dollars, and give a new note, at a year, for both sums, *and their assent to it had been proved,* then undoubtedly they would have been precluded from availing themselves of this defence. But there is not a particle of evidence in the case, of such knowledge and assent on the part of the endorsers. In *Field* v. *Nickerson*, it appeared that the defendant, when called upon to endorse the note, was informed by the makers that the note was not to be called for immediately. The Court held that this did not enlarge the time within which the demand ought to be made, or justify any negligence on the part of the plaintiff.

The offer of the defendants to give their own note for the one in question, having been rejected by the plaintiff, was no waiver of the want of due notice ; nor was it binding upon the defendants. The cases of *Crain* v. *Colwell*, (8 *John.* 384,) and *Agan* v. *M'Manus*, (11 *John.* 180,) were precisely like the present upon this point, and the Court there say, that the offer being rejected, is no waiver, nor does it amount to a promise to pay.

There was nothing in the specification of the particulars of the judgment confessed by *Kumbel* to the defendants, to authorize the conclusion that this note constituted a part of the consideration. The items are all for

money lent; nor does the date of any of them correspond with the date of the note. These are all the circumstances in the case, from which it is to be inferred, either that the defendants knew and assented to the original arrangement between the plaintiff and maker of the note, or that they waived the want of due notice, and subsequently promised to pay. Being clearly of opinion that no such inference can legally be drawn from them, I think the Judge erred in his charge to the jury upon this point, and that the verdict was against both law and evidence.

I am accordingly of opinion, that a new trial ought to be granted.

SAVAGE, Ch. J. concurred.

New trial granted.