ALBANY,<br>Oct. 1827.<br><br>Aymar<br>v.<br>Beers

New trial granted.

---

AYMAR and AYMAR *against* BEERS.

ASSUMPSIT; tried at the New York circuit, November 30th, 1825, before EDWARDS, C. Judge.

The action was against the defendant as drawer of an inland bill of exchange, dated New York, December 12th, 1822, directed to Robert Abbott, jun., & Co., Richmond, Virginia, payable to the order of John Bassett, at three days sight, for 487 dollars 34 cents. The bill was indorsed by John Bassett to George W. Bassett, and by *him to the plaintiffs. The signature and indorsements were admitted at the trial; and it was also admitted that John Bassett, the payee, was then, and always had been the owner of the bill; this suit being for his benefit.

The plaintiffs offered to show that the defendant had

*A bill of exchange payable a certain number of days after sight, in order to charge the drawer, should be presented for acceptance within a reasonable time. [*706] What is a reasonable time, is a question of law under the circumstances of each particular case; not a question of fact for a jury.*

The situation of the parties; as where they are when the bill is drawn, whether the payee is to be himself the bearer, the distance between the place of drawing the bill and the payee, the delay arising from the sickness of the payee, or other accident not arising from his misconduct, are all proper to be considered.

But not the consideration upon which the bill arose; for this can have no influence on the question of diligence.

A bill of exchange was drawn in the city of New York, December 12th, 1822, payable at 3 days sight, to be borne by the payee, who was then at New York, to Richmond in Virginia, where the payee resided, a distance of about 300 miles. The bill was presented for acceptance on the 10th of January, 1823, (29 days after the date,) which was refused. Whether this was reasonable time, delay by ill health and other accident being out of the question? *Quere.*

But the payee being out of health at New-York, on his journey, and after his arrival at his residence in Virginia, (which was the 1st of January;) held, that this excused the delay, if it would otherwise have been unreasonable.

Promissory notes payable on demand, stand on the like footing as to the time of demanding, &c., to charge an indorser. *Per* WOODWORTH, J., and the cases cited by him.

received to the payee's use, the money for which the bill was drawn, and under what circumstances. The evidence was overruled.

The question was, whether due diligence had been used by the payee, in presenting the bill for acceptance. It was not presented till the 10th of January, 1823; when the drawees declined accepting it, and it was protested for non-acceptance, of which due notice was given to the drawer. The bill was presented for payment on the 14th of January, 1823, and protested for non-payment, of which due notice was also given to the drawer.

The plaintiffs sought to excuse the lateness of the presentment for acceptance, by the sickness of the payee and other circumstances; but the judge not deeming the excuse set up sufficient, non-suited the plaintiffs, though they insisted that they had a right to go to the jury upon the question.

The particulars of the proof offered as to the consideration of the bill, and rejected, and of the proof received, or offered and rejected in excuse for the delay, will be found at large in the opinion of the court; and need not, therefore, be stated here.

*J. Anthon*, for the plaintiffs, now moved to set aside the non-suit, and for a new trial.

He said, there is no general rule as to the presentment of bills payable after sight. Each case depends upon its own circumstances. Whether the presentment has been made in a reasonable time or not, therefore, is a question of fact for the jury; and it should have gone to them in this case; and the judge should have received the evidence of the circumstances under which the consideration arose, and why the bill was given. (2 H. Bl. 565, 570; 20 John. *146; 13 Mass. Rep. 136, 137; 1 Yeates, 147; 7 Taunt. 397.)

But if reasonable time was a question of law for the court, the judge ought to have ruled, on the evidence, with the plaintiffs.

*Clisbee & G. Griffin*, contra. The judge was right in rejecting the testimony as to the consideration for which the bill was drawn. Nor was the residence of the payee material. The instrument must be judged by itself. (3 Campb. 57; 11 Mass. 27; 8 John. 189; 2 W. Bl. 1249; 1 Cowen, 250.) Time is a material part of a bill, and can not be varied by parol. (8 John. 189.)

The payee, by his laches in presenting the bill for acceptance, made it his own. Reasonable time, when the facts are ascertained, is a question of law. (1 Cowen, 397, and cases there cited. 2 Caines, 369; 11 John. 187; 10 Mass. Rep. 86; 1 Yeates, 145; 2 Phil. Ev. 44.) A bill payable a given time after sight, must be presented presently, unless it has previously been put in circulation. (20 John. 176, and the authorities there cited.) The degree of care and diligence to be exerted has been passed on by several cases involving questions like the present, on bills of exchange or promissory notes; and will be found to be against the plaintiff. (1 Cowen, 397; 20 John. 152.) The rule of diligence is the same as to all payees wherever they reside. (8 John. 192.) And it should be kept constant and uniform in a commercial country. (Chit. on Bills, 209, 210, 211; Phil. ed. of 1821.) True, the particular doctrine for which we contend is afloat in England; but that is no reason why it should be so here.

*Anthon*, in reply, said that nearly, if not all the cases making reasonable time a question of law, relate to presenting bills or notes for acceptance or payment which are payable at a certain time; or to the time for giving notice of non-payment of other bills. (6 East. 14, note(*a*.) 6 East. 16; id. 3; Chit. on Bills, 210; 1 Yeates, 147; 8 John. 173; 11 John. 187; 2 Caines, 369.)

*\*Curia*, per WOODWORTH, J. Evidence was offered at the trial, to prove that the payee was a farmer in Virginia; and had brought to the city of New York a cargo of wheat, which the defendant had sold; and that the bill was given for the balance of the nett proceeds. This was objected to,

[\*708]

ALBANY,   and overruled by the judge. The decision was correct.
Oct. 1827.  The bill not appearing to have been drawn for an unlawful
Aymar     consideration, but, *prima facie,* for a valid one, the defend-
v.        ant was liable as drawer in case of a demand within a rea-
Beers.    sonable time, and non-payment, accompanied with notice
to the drawer. It is on this ground, the right to charge
the defendant is claimed; and, therefore, whether the bill
was given for the consideration stated, or any other good
cause, the result would not be varied.

It appeared in evidence, that on the 10th of January,
1823, the bill was presented for acceptance, which was re-
fused; and on the same day, notice of non-acceptance was
sent by mail to the defendant.

On the 14th of January, 1823, the bill was presented for
payment. It was not paid, but protested for non-payment.
Abbott & Co., the drawees, failed to meet their engage-
ments on the day the bill was presented; and were sup-
posed to be insolvent. John Bassett, the payee, resided at
Hanover, about 20 miles from Richmond, Virginia. When
he returned home from New York, which was between
the 1st and 6th of January, 1823, he had the draft in his
possession. The delay in presenting the bill after Bassett
returned, was in consequence of ill health. In traveling
from New York directly to his residence in Hanover, the
distance is about 20 miles less than to pass through Rich-
mond.

The defendant moved for a non-suit, which the judge said
he should order, unless further evidence was produced.

The plaintiff then proved that the payee was in New York
in December, 1822; and had dealings with the defendant,
who had funds of his in his hands. That he was in the
defendant's counting-room on the 13th of December, 1822;
[*709]   and said he intended to depart for his residence on *the
14th. He was then laboring under a bad cold and
asthma.

The plaintiff offered to prove that it was understood be-
tween the parties, that the payee was to carry the bill with
him; but the evidence was excluded.

The counsel for the plaintiffs insisted on their right to

go to the jury, on the ground that the question of due diligence was for their consideration, under the direction of the judge; but he decided that it was a question for the court, when the facts are not disputed; and ordered a nonsuit.

It will be conceded, that if a presentation for acceptance was not made within a reasonable time, and notice given of non-acceptance, the defendant is discharged. The material questions then are, 1. Is the court to decide whether there has been reasonable diligence, or is it the right of the jury? 2. If the latter, then a new trial must be granted, because the question has not been disposed of by the proper forum. But if the former, then we are called on to decide, whether, under the circumstances, the delay was unreasonable.

It is scarcely necessary to remark on the importance of certainty to the commercial world, in all questions relating to bills or notes: and it is equally obvious, that if the jury are to decide on this question, conclusions may be expected to vary on substantially the same state of facts. I should be unwilling to sanction such a doctrine, unless required by a well-settled course of decisions. I am aware of no exception to the rule, that when there is no dispute about facts, it is the business of the law to declare what shall be their effect. A bill payable a certain number of days after sight, is analogous to a promissory note payable on demand, so far as respects the use of due diligence. In both cases, an unreasonable delay will exonerate; in the former an indorser, in the latter a drawer. These cases are distinguished from notes or bills having a certain number of days to run. There, by repeated adjudications, the law has accurately defined within what time a demand *shall be made, and notice given. The omission to pursue the course prescribed, is at the peril of the holder. The question of reasonable diligence does not seem to be open. Anything constituting a legal excuse in such a case, must generally be derived from the act of the party to be charged, showing that he has directly or impliedly consented to release the rule regulating demand and notice. With respect to

[*710:

bills payable after sight, or notes on demand, when the action is to charge the drawer or indorser, no specific general rule, as far as I can discover, having been laid down in the books, other than that reasonable diligence must be used, we cannot expect to find anything more than decisions on particular cases, upon questions whether they constitute reasonable diligence or not. So far as they go, the law may be considered as reduced to certainty; and a similar rule will be applicable to similar cases. But when a new case arises, where the facts are essentially variant, the court are then to resort to the general principle; and adjudge whether the new case is fairly within its operation. Indeed, it is apparent that a rule limiting the demand, in all cases, to a certain number of days, on bills after sight, and notes on demand, would be arbitrary, and inconsistent with a consideration of the question of due diligence, which implies the exercise of some discretion, varying according to the features of each particular case. The discretion to be exercised is a legal one, governed by the principle that reasonable diligence shall be used; and disposing of the question presented by the given case, according to the just principles resulting from the rule. If this is not a mistaken view, it will be seen how foreign the question is from the duties of a jury, who are to pronounce on facts only, unless the law and the fact are so blended that they must necessarily pronounce on both. In such cases, however, they cannot usurp the legitimate power of the court; a verdict against the law arising on the facts found by them being liable to be set aside.

On this question, I apprehend, our courts have held a uniform language. It is the same as that of lord Mansfield, *in *Tindal* v. *Brown*, (1 T. R. 163:) " What is reasonable notice is partly a question of fact, and partly a question of law. Wherever a rule can be laid down with respect to this reasonableness, that should be decided by the court, and adhered to for the sake of certainty." In *Furman* v. *Haskin*, (2 Caines, 372,) the court say, " What is a reasonable time, is a question of law, if the facts be agreed on;" the rule I take to be universally applicable, as well to bills

[*711]

at sight as others. That case arose on a note payable on demand. Our courts have adhered to this rule. In England it is admitted to be fluctuating. There seems to have been a departure from the doctrine of lord Mansfield; for in *Muilman* v. *D'Eguino*, (2 H. Bl. 569,) Eyre, C. J., says, " It must always be for the jury to determine whether any laches is imputable to the plaintiff;" and in *Fry* v. *Hill*, (7 Taunt. 398,) it is said by Gibbs, C. J., " It would be a question for the jury, whether there has been a default to present the bill within a reasonable time." The rule is commented on in *Darbishire* v. *Parker*, (6 East, 3 ;) and not definitely settled.

The remarks of Lord C. J. Willes in *Bell* v. *Wardell*, (Willes' Rep. 204,) where a custom was pleaded for the inhabitants of a town to walk and ride over a certain close at all reasonable times, were, that what was deemed a reasonable time was considered to be a question of law arising out of all the circumstances. He observes, the court were the proper judges; " for what is contrary to reason cannot be consonant to law, which is founded on reason ; and therefore, the reasonableness in these and the like cases, depends on the law, and is to be decided by the judges."

The rule rests on this ground with us, and ought not to be disturbed.

The next question is, has there been unreasonable delay ?

In the case of *Robinson* v. *Ames*, (20 John. 146,) the action was against the defendant as drawer of a bill of exchange in Georgia, dated the 6th of March, 1819, upon *Townsend and White, in New York, payable 60 days after sight to Starr and Ross or order; by whom it was indorsed to the plaintiff. The bill was presented for acceptance on the 20th May, 1819, which was refused, and notice given. One question was, whether the bill was presented in due time. The question was ably examined by chief justice Spencer. He observes, that where a bill of exchange has been drawn payable at sight, or any specified number of days after sight, there is no definite or fixed rule when the bill shall be presented for acceptance, other

[*712]

ALBANY,
Oct. 1827.
——————
Aymar
v.
Beers.

than this : that due diligence must be used ; and that with respect to such bills, and particularly where they are negotiated by the payee, there is much more latitude as to the time of presentment, than where the bill has a fixed period of payment.

The bill, in this case, was not negotiated, or put into circulation, by the payee, although it was indorsed by him. He did not part with his interest in the bill ; and therein the cases are distinguishable. Had the bill been put in circulation, probably the question of laches could not have arisen ; for in the case just cited, 75 days had elapsed before presentment ; and yet held there was no unreasonable delay. Although less latitude is allowable on bills not negotiated, yet it is manifest that some indulgence is allowed ; and, as appears from the case of *Muilman* v. *D'Eguino,* the courts had been very cautious in fixing any time for an inland bill payable at a certain period after sight, to be presented for acceptance. This difficulty must always exist, when it is considered that the drawer of a bill payable after sight, has himself fixed no period for presentment ; but left it to be governed by the circumstances of the case.

In the case of *Field* v. *Nickerson,* (13 Mass. Rep. 131,) the action was by the indorsee, against the indorser of a note payable on demand. A delay of 8 months was held unreasonable. The court considered a note payable on demand, like a bill payable at sight ; that, in the latter case, the holder must present his bill for acceptance within a reasonable time, in order to charge the drawer ; and in *the former, the indorsee must make a demand within a reasonable time, in order to charge the indorser ; that the time may vary according to the circumstances and situation of the parties. The same rule is recognized in *Losee* v. *Dunkin,* (7 John. 70.) It was held, in that case, that there is no precise time at which a note payable on demand is to be deemed dishonored. Two months and one day had elapsed before the indorsement was made. It was held that the maker might show payment to the payee. The decision seems to be placed on the ground that no particu-

[*713]

lar circumstances were disclosed in the case; and therefore they could not say that it was erroneous to let in the defence. In *Sice* v. *Cunningham*, (1 Cowen, 397,) this court held that what is a reasonable time, is a question of law to be decided by the court; and that 5 months was an unreasonable delay, where all the parties resided in the same city.

If no particular circumstances had been stated in this case, I should incline to think there was unnecessary delay; but even then, it may be observed that, in the cases reported, where the delay was held unreasonable, a much longer time had intervened. Here were only 29 days intermediate the date and presentment; and it may be inferred that an immediate transmission of the bill by mail, was not contemplated. The payee resided in Virginia; and was about returning immediately after the bill was drawn. He resided within 20 miles of the drawee's. It is more reasonable to suppose that the payee was to have been the bearer of the bill. He might not incline to risk the conveyance by the mail, or transfer the bill to a correspondent in Richmond; or he may not have known a proper person to whom to commit the trust. Be this as it may, it seems to me that, in the payee's situation, the law did not impose on him the necessity of forwarding by mail, or sending a special agent.

The question, then, of due diligence, turns on the particular circumstances disclosed. The only facts of importance that enter into this view of the case are, that the payee, being at the distance, say, of 300 miles, or more, *from Richmond, when he received the bill, was at the time afflicted with a violent cough and asthma, to which he had long been subject. George W. Bassett testified, that, after the payee had returned home, he was prevented by ill health from presenting the bill; and that he was confined to his house by sickness between the 3d and 10th of January, 1823, having a violent cold approaching to pleurisy. From the state of his health, it may well be presumed that he was retarded in his journey. If he left New York the 13th of December, and arrived at home January 1st, there are 16 days, a period unnecessary for a man in health; but

[*714]

it cannot safely be affirmed that a person laboring under a severe disease; would not require' that length of time. I think this fact is a sufficient answer to the objection of unnecessary delay in proceeding from New York to Virginia. While at home he was disabled by sickness ; and within a few days deputed George W. Bassett to transact the business for him. I cannot say he delayed unreasonably, nor can I impute laches that will exonerate the drawer.

Chitty, (in his Treatise on Bills, 179, or Phil. ed 1821, page 212,) lays down the rule, that the neglect to make a presentment at a proper time, may be excused by illness, or other reasonable cause or accident not attributable to misconduct of the holder. All the authorities admit that the circumstances of the case may be looked into and considered ; and, if so, I am of opinion that in this case there are no sufficient grounds to exonerate the drawer.[1]

It is proper to rdd, that the evidence offered of its being understood between the parties that the payee was to carry the bill with him, should have been admitted. If there was such an understanding, it goes to fortify the conclusion

[1] What is a reasonable time, within which a note payable on demand should be presented for payment in order to charge an indorser, depends on all the facts of the case to be proved at the trial. *Bank of Utica* v. *Smedes*, 3 Cow. 663. *Mohawk Bank* v. *Broderick*, 10 W.en 304. *Sice* v. *Cunningham*, 1 Cow. 397.

Where a bill was payable in London, but by mistake was sent to Liverpool to be presented for payment, and the mistake being discovered, the bill was sent to London, where it did not arrive until two days after its maturity, but would have arrived in season but for the oversight or negligence of the clerks of the post-office in Liverpool; held, that such mistake or negligence was not a sufficient excuse for not presenting the bill on the day it fell due. *Scofield* v. *Bayard*, 3 Wen. 488.

It seems, that where there is an impossibility to present the bill on the day it falls due, owing to unavoidable accidents, and the holder is not in fault for the delay, a subsequent presentment will be good. Ib.

A check must be presented at the bank within a reasonable time. *Conroy* v. *Warren*, 3 J. C. 259. *Cruger* v. *Armstrong*, 3 J. C. 259. *Devoe* v. *Moffat*, Anth. N. P. 163.

But where the drawer sustains no injury by its not being presented, as where he defeats the payment of the check by withdrawing his funds from the bank, he cannot object to a delay in presenting it. Ib. N. Y. Dig. Vol. 1, p. 319, *et seq.*, tit. *Bills of Exchange.*

that there was due diligence, inasmuch as it waived the more expeditious mode of conveyance by mail, and risked the delay to which the payee might be exposed.

*The non-suit must be set aside, and a new trial granted; the costs to abide the event.

Motion granted.

SUTHERLAND, J., not having heard the argument, gave no opinion.