Comstock, Ch. J.
There is a most inconvenient uncertainty as to the rule of law applicable to the question in this case— an uncertainty, not inherent in the subject, but which arises-from the want of harmony, and still more, I think, from the *29 want of an intelligible principle in many of the adjudged cases. The difficulty is not inherent, because there are two opposing principles, either of which would furnish a rule sufficiently clear and precise for the determination of this and all similar controversies; but the greater number of decided cases, while following neither one of those theories, do not suggest any other having the elements of certainty which belong to a rule of law.
In the light of one of these principles, the contract is interpreted according to its terms, that is to say, a promissory note, payable on demand, with interest, and indorsed, is regarded as a continuing security; so that, on the one side, the maker is not deemed in default until the money is actually demanded, while, on the other, the holder may make the demand when he pleases, and is not chargeable with neglect if he does not make it within any particular time. In this view, which gives the most obvious interpretation to the language of the contract, no dishonor attaches to such a note until payment is required and refused; and the indorser is held if notice of the refusal is given to him with due diligence. And this is the doctrine of the English courts. In Brooks v. Mitchell (9 Mees. & Wels., 15) a note of £1,000, payable on demand, with interest, had been indorsed and transferred several years after its date; and the question was, whether the indorsee took it subject to equities between prior parties. The court observed: “ If a promissory note, payable on demand, is, after a certain time, to be treated as overdue, although payment has not been demanded, it is no longer a negotiable instrument. But a promissory note, payable on demand, is intended to be a continuing security. It is quite unlike the case of a cheque, which is intended tó be presented speedily.” Such was also the doctrine laid down in Borough v. White (4 B. & C., 325).
The alternative, or opposing rule, is; that the holder of such, a note as we are speaking of must, if he wishes to charge the indorser, make his demand of the maker without delay, or, in the language of the law-merchant, within a reasonable time. This is a rule sufficiently exact, if we give to the phrase, “ rea *30 sonable time,” its proper legal signification. In the sense of the law relating to bills and notes, these words exclude all delays, except such as necessity or convenience require. They call simply for due diligence in performing the act which is to be done. -They have no reference to what may be a convenient time for the maker of the principal obligation to pay his debt; but they refer solely to the time within which the holder can conveniently make the necessary presentment or demand, or give the required notice. What is reasonable time, or due diligence, is settled in most circumstances by legal rules capable of a definite application to questions as they arise. In the formation of these rules, a suppose'd credit, or indulgence toward the debtor, has never entered as a circumstance or element, to be considered. Thus, in the language of the books, notice of the dishonor of a bill or note must be given to the drawer or indorser within a reasonable time. But where the parties reside in the same town or city, this reasonable time is held not to extend beyond the next day after the presentment for acceptance or payment. (Story on Notes, §§ 319, 320.) Where they reside in different towns or cities, and the notice is sent by post, it must be mailed early enough for transmission on the day following the dishonor. ‘ So, in the cases where presentment for acceptance is necessary, as in the instance of a bill payable at so many days after sight, or, according to some authorities, payable at sight, the presentment must be made within a reasonable period: it need not be made on the very day when the bill is dated, or when it comes to the hands of the holder; but the bill cannot be held for a single hour as a time instrument or obligation. It must be presented as soon as the circumstances will reasonably permit, reference being had to the distance of the parties from each other, to sickness and other casualties; but no time is allowed for the convenience of the person on whom the bill is drawn. The notion of a credit or indulgence due to him, in respect to the funds in his hands, does not enter at all into the calculation. These are well settled rules of the commercial law; and if promissory notes, payable on demand, in all cases fall within them, there will *31 very rarely be any difficulty in determining whether such a note has been demanded in due season to charge the indorser. The demand must, according to these rules, be always made within a reasonable time, that is to say, as soon as the holder can make it; allowing, for his convenience, the next day after it comes to his hands, if the parties reside in the same town, or longer, according to their distance from -each, and other circumstances which may reasonably prevent the prompt performance of the act.
We have these two principles, directly antagonistic to each other, by one or the other of which, questions like the one before us ought to be determined. We say this, because there is no intermediate ground to stand upon. A note payable on ' demand is either a continuing security, upon which a demand may be made in season at any time, or it is not,.and then a demand must be made immediately, that is to say, on the next day after the holder receives the note, or within such additional time only as the circumstances of distance, &c., may require. If we depart from these rules, and attempt to find one lying somewhere between them, we are lost in uncertainty, and the community will never know how to transact business of this nature in safety. If we admit the theory that, by taking a - demand note, some term of credit, of longer or shorter duration, is given to the maker, but yet a term not to be ascertained by an actual presentment and demand, then a question forever arises: what is that period of credit? And this is a question absolutely incapable of solution according to any principle intelligible in itself or capable of application to the dealings of men. If we say that such a note is not in dishonor for ten days, where the parties live near to each other, and that it need not be demanded within that time, what reason can be given for saying that it must be demanded within ten months ? It seems to me plain that such obligations are due immediately for the purpose of charging an indorser, or letting in a defence against an indorsee which existed between the original parties, or else that they are not due for those purposes until the money is called for. .
*32 Some authority can be cited in favor of both these opposing principles. As I have said, a note, payable on demand; with interest, is regarded in England as a continuing security, imposing no duty of presentment within any particular time. In this country, one of the earliest cases on the subject which I have noticed is that of Field v. Nickerson (13 Mass., 131), which sustains the opposite doctrine. In that case the note was payable on demand, with interest, and indorsed by the defendant for the accommodation of the maker. No demand was made until eight months after the date of the instrument. The question was, whether the indorsee was discharged by that delay. Chief Justice Parker, in giving the opinion of the court, thought that such notes must be demanded within a reasonable time, in the sense of the commercial law, that is, as soon as the act could be conveniently done. He observed, in substance, that such a note, in respect to the duty of presentment, was like a draft payable at sight; and, if he was correct in that view of the question, the conclusion was plain, because, in regard to sight drafts, the rule is well settled. The holder must present them with due diligence, haying no reference to the convenience of the drawee.
But a considerable number of later cases might be referred to, resting on less definite grounds, and tending very much to obscure the general question. In Martin v. Winslow (2 Mason, 241), there was a delay of seven months in presenting a note payable on demand, and it was held by Judge Story that the indorser was discharged; but, in holding this, the doctrine was not asserted that immediate diligence must' be exercised in making the demand, nor was it suggested that, if the delay had been a month or a week shorter, the indorser would not have been held. On the other hand, the Supreme Court of Massachusetts, in Seaver v. Lincoln (21 Pick., 267), held that a demand made on the seventh day after its date upon a note payable on demand, with interest, was in due season to charf'1-"' the indorser. The holder resided eighteen miles from the maker and six from the indorser; but there was no suggestion or pretence that the delay was excused by any circumstances *33 of that character, or that it could be accounted for at all by any convenience or necessity of the holder. Nor'does the case assert, on the other hand, that such securities are of a continuing character, according to the doctrine of the English courts. In Ranger v. Carey (1 Metc., 369), the note was transferred by the payee one month after it was given, and the court held that it was not to be deemed as due and dishonored so as to be subject to a defence which the maker had against the original holder. In the following year the contrary proposition was determined by the same court, in reference to a similar note transferred eight months after its date. (The American Bank v. Jenness, 2 Metc., 288.) No reason was given for either decision, except that, in one case, the time was only one month, and in the other, eight.
The course of decision in our own State is not more satisfactory. The earliest case is that of Furman v. Haskin (2 Caines, 369), where it appeared that eighteen months had elapsed before the transfer of the note, and this lapse of time was held sufficient to admit a defence of the maker. It does not appear that the note was on interest. In Sice v. Cunningham (1 Cow., 397), the question was, whether the indorser was discharged by a delay of five months in demanding payment of the note from the maker. The court held that he was discharged ; but, whether a delay for any shorter period would have the same effect, was not suggested, nor was any rule laid down for the determination of questions of this character. In the later case of Wethey v. Andrews (3 Hill, 582), the note Was payable on demand, with interest, and it was transferred three or four weeks after its date. It was held not dishonored, so as to let in a defence of a want of consideration. In this case, the circumstance that the security was on interest seems to have been treated for the first time as quite material to the question. Judge Coweh observed, that “ it would be contrary to the gene- ■ al course of business to demand payment short of some proper point for computing interest, such as a quarter, half a year, a year,” &c.; and he goes on to cite, with apparent approbation, the doctrine of the English courts, that such securities are of a *34 continuing character, and. cannot be considered as dishonored until payment is demanded and refused. In Vreland v. Hyde (2 Hall, 429), it was decided by the Superior Court of the city of Hew York that such a note, I mean one on demand with interest, could be demanded, and the indorser charged, nineteen months after its date. I do not think that the' reasons assigned for that decision were very carefully considered, although the decision itself is in accordance with the conclusion to which I have arrived in the present case.
We are satisfied that questions of this kind ought to be determined according to one of the two rules which have been mentioned; in other words, that the demand may be made in due season at any time so as to charge the indorser, or else that he is discharged unless it be made with due diligence, in the general sense of the commercial law. Between these alternatives, we are to select the one which will best harmonize with the language of the contract and the intention of the parties. A demand note may be payable with or without interest. If the security be not on interest, it may be a fair exposition of the contract to hold that no time of credit is contemplated by the indorser, and that the demand should be made as quickly as the law will require upon a check or sight-draft. Such a note, payable at a bank where the maker keeps his funds, will perform essentially the office of a check, imposing the duty of early presentment in order to hold the collateral parties. Drafts or checks are, however, almost universally used in such transactions. But, whatever may be the rule where the security is not on interest,’we think that a note payable on demand with interest is a continuing security, from which none of the parties are discharged until it is dishonored by an actual presentment and a refusal to pay. The loan or forbearance of money may be for a definite or an indefinite time. If the parties declare in the written instrument, which is the only evidence of their agreement, that the money shall be paid on call, with interest in the meantime, a productive investment of the sum for some period of time is plainly intended. What, then, is that period ? The only answer which can be given is, that *35 it is indefinite or indeterminate, and ascertainable only by an actual call for the money; and if that be the meaning of the principal parties, the indorser must be deemed to lend his name to the contract with the same intention. The only rational alternative is, that the payee or holder of such a note must demand its payment on the same day, or the day after, he receives it, unless some necessity or convenience of his own will excuse a longer delay; and he must give immediate notice of the refusal to the indorser. But a demand thus quickly made would probably, in every case, violate the actual intention of the parties, and it ought not, therefore, to be required as a rule of law for any collateral purpose. It should not be required in order to charge an indorser, if the act would not be consistent with the fair interpretation of the principal contract. In short, we see no good reason why a note, like the one now in question, should not be construed precisely according to its terms; and if we follow that construction, such instruments are not dishonored by the mere effluxion of time which is provided for in their own language. It may be well to observe that the present question is not identical with the one which arises where, after the transfer of such a note, the maker seeks to introduce a defence existing against the first holder. The lapse of time, or the non-payment of interest after the regular period or periods for such payment have passed, may be sufficient to put the purchaser on inquiry, or to justify a presumption that the instrument was actually dishonored before the transfer. It might well be true, in such a case, that a demand had been actually made and notice given to the first indorser so as to charge him, while, at the same time, the maker would be let in to defend, if he had any defence. Questions of charging the indorser, therefore, and questions of allowing an original defence to the maker, may depend on very different considerations.
On the whole, we are of opinion that, in the case before us, the indorser was duly charged by the actual demand upon the maker of the note and by the notice of his refusal to pay. In arriving at this conclusion we are aware that we go somewhat *36 beyond many adjudged cases, and that the decision is in conflict with some of them. Yet we go no further than the principle of other cases fairly leads us; and we have the satisfaction of believing that the rule we lay down is not only just in itself and tends to uphold dealings according to their actual intention, but that it will promote certainty in a branch of the law where certainty is eminently desirable.
The judgments of the general and special terms of the Supreme Courts must be reversed, and a new trial granted, with costs to abide the event.
Selden, Denio, Davies, Mason and James, Js., concurred.