Wm. C. Fugitt, Respondent, *v.* Henry Nixon, Appellant.

44  295
31a 644

44  295
34a 497

44  295
51a 248

44  295
55a  62

1. *Bills and notes — Reasonable time, what is.* — The presentment of a draft to the drawee must be made in a reasonable time. What is a reasonable time is a question of fact, and depends upon the circumstances of the case.

2. *Bills and notes — Insolvency of maker — Want of presentment and demand.* — As between the holder of negotiable paper and the prior parties thereto, the insolvency or bankruptcy of the maker or acceptor will constitute no excuse for want of presentment and demand.

3. *Bills and notes — Dishonor, notice of — Diligence, when question of law; when of fact.* — What is due diligence, in giving notice of dishonor, is a question of law when the facts are admitted. Where the facts are disputed, the court should give hypothetical instructions, leaving the facts to be determined by the jury.

4. *Bills and notes — Dishonor of — Reasonable diligence must be had in ascertaining residence of party to be notified.* — When the residence of the party to be notified of the dishonor of a bill of exchange is unknown, it is incumbent on the holder, and all other parties who are bound to give notice, to use reasonable diligence and make due inquiries as to the residence of the party so entitled to notice. What will be due and reasonable diligence in this respect must depend on the circumstances of the particular case.

5. *Bills and notes — Dishonor, notice of — Laches only imputable in giving, where residence of indorser is ascertained.* — The time employed in endeavoring to find the residence or address of the indorser must be deducted; and laches are only imputable to the holder after failure to give notice, where the residence or address is ascertained.

6. *Bills and notes — Dishonor — Notice of, where the indorser can not be found.* — In case the whereabouts of the indorser of negotiable paper can not be ascertained, if an agent is employed to give the necessary notice at the town where he is about to stop, immediately upon his arrival, this is sufficient diligence.

## *Appeal from Fifth District Court.*

This was a suit brought on a draft for $1200, drawn March 29, 1866, at Alleghany City, Pa., by the Alleghany Savings Bank, on Messrs. Work, McCouch & Co., payable to the order of Messrs. Baxter & Bell, indorsed by the latter to defendant, and by defendant to plaintiff. The petition alleged that the draft was transferred to plaintiff July 12, 1866, and that plaintiff transferred it for the purpose of collection to Messrs. Kemper & Paxton, from whom it passed by successive transfers to the

Western National Bank of Philadelphia, which bank presented it for payment to the drawees on the 3d day of October, 1866. The answer put in issue the date of the transfer to plaintiff, and averred it to be the 20th day of April, 1866; and that between that date and October 3, when the draft was presented for collection, while the draft was kept out of circulation, the drawer failed, and the draft became worthless. The answer claimed that, by reason of such negligence in presenting the draft for payment, defendant was discharged. It also pleaded failure of notice of presentation and demand within a reasonable time.

*Asper & Pollard*, for appellants, cited Bogg v. Keil, 1 Mo. 743; Davis v. Francisco, 11 Mo. 572; Linnville v. Welsh, 29 Mo. 203; Sanford v. Dillaway, 10 Mass. 52; Farnum v. Fowle, 12 Mass. 89; Granite Bank v. Ayres, 16 Pick. 392; Edw. on Bills, ed. 1857, p. 486; Jones v. Garrett, 39 Mo. 268; Edw. on Bills, ed. 1857, p. 597; Story on Prom. Notes, § 330; Pars. on Prom. Notes, 506; Ireland v. Kip, 11 Johns. 231; Howard v. Ives, 1 Hill. 263; Strahan v. Graham, 4 Mees. & Welsby, 720; Goupy v. Harden, 7 Taunt. 159; Fry v. Hill, 2 Eng. Com. Law, 417; Smedes v. Bank of Utica, 20 Johns. 372; French v. Bank of Columbia, 4 Cranch, 141; Edw. on Bills, 622–4; Pars. on Cont. 514, 516; Dobree v. Eastwood, 14 Eng. Com. Law, 289; 3 C. & P. 250; Lookwood v. Crawford, 10 Conn. 361.

*J. D. S. Cook*, and *G. W. Dunn*, for respondent, cited 1 Pars. on Bills, etc., 516, 517, n. *f;* 2 Penn. St. 355; 6 Watts & Serg. 399; 5 Metc. 212; 5 Mass. 167; 18 Johns. 229; 9 Pet. 33, 45; Story on Bills, ed. 1860, § 294, n. 1; Marsh v. Maxwell, 2 Campb. 210, note; Britain v. Johnson, 1 Dev. 293; 2 Campb. 461; 4 How. 336; 2 Pet. 96; 7 N. Y. 366; Story on Notes, § 335, and cases cited; 1 Barn. & Cress. 245; 8 Eng. Com. Law, 105; 8 Barn. & Cress. 387; 15 Eng. Com. Law, 193; Story on Prom. Notes, §§ 348, 354; Story on Bills, § 301; 1 Pars. on Notes, 466, 472; Pars. on Notes and Bills, 339–345; 7 Taunt. 158, 397, 418; 3 Carr. & Payne, 80; 14 Eng. Com. Law, 462; Field v. Nickerson, 13 Mass. 131.

WAGNER, Judge, delivered the opinion of the court.

The court below very properly refused the instruction asked for by the plaintiff, that if, before the time the draft was indorsed by the defendant to the plaintiff, the drawers had become insolvent, and continued insolvent until the same was presented for payment, the finding should be for the plaintiff, without regard to the time when the demand was made.

The presentment of a draft to the drawee must be made in a reasonable time. What is a reasonable time is a question of fact, and depends upon the circumstances of the case. As between the holder of negotiable paper and the prior parties thereto, the insolvency or bankruptcy of the maker or acceptor will constitute no excuse for want of presentment and demand. "The reason of the rule," said Judge Napton, "is that, notwithstanding the insolvency of the maker, some portion of the note may still be collected; and if no portion can be, at the time of demand, collected, the circumstances of the maker may undergo a change; and it is therefore the indorser's interest that his remedy over against the maker shall not be lost by the laches of the indorsee." (Davis v. Francisco, 11 Mo. 572.) To this it may be added, as an additional reason, that it is possible that the bill may still be paid by the assistance of friends or otherwise.

In the case we are now considering, the court, with all the facts before it, found that the presentment and demand was made in a reasonable time, and that payment was refused, and that the bill was regularly protested. We have no objections to make to this finding here. The principal defense, however, relied on is the insufficiency of the notice of non-payment and protest. The bill was indorsed by plaintiff to Kemper & Paxton; they indorsed it to a firm in St. Joseph, who sent it to New York, and it was indorsed to the National Bank of that city, by whom it was indorsed to the Western Bank of Philadelphia. At the request of the Western Bank it was presented by a notary, on the 3d day of October, to the drawees for payment, and payment refused, whereupon the notary protested the same, and on the same day inclosed in an envelope, addressed to the cashier of the

National Bank in New York, notices for all the drawers and indorsers of the draft.

Kemper & Paxton received the notice of the dishonor early in the same month (October); on what precise day the evidence does not show: and they mailed notice to the plaintiff before the departure of the next mail. On the same day on which the plaintiff received notice he made diligent inquiry for the post-office address of the defendant, who was then a resident of Ohio, and was unable to ascertain it, but was informed by defendant's agent in this State that defendant was then on his way to Missouri, and would arrive in a short time. Plaintiff then instructed Kemper to notify defendant of the dishonor of the draft immediately on his arrival, and that he looked to him for payment. This was done. Kemper says he gave the notice some time in the last of October; but defendant states he did not arrive till the 2d of November, being delayed a week or so longer than he expected to be in reaching the State. This date is only of importance in fixing the time in which the first notice was received. The protest was made on the 3d of October, and it seems that Kemper & Paxton had received notice thereof some two or three weeks before the arrival of the defendant. Formerly it was held that the time within which notice of dishonor must be given was a question to be passed upon by a jury, and it was only necessary that it should be sent within a reasonable time. The courts have, however, fixed the time so definitely that it is inappropriate to speak of it as reasonable.

In a case in this court it was held that what is due diligence in giving notice of dishonor is a question of law where the facts are admitted. Where the facts are disputed, the court should give hypothetical instructions, leaving the facts to be determined by the jury. (Linville v. Welch, 29 Mo. 203.) The evidence does not fix the exact time at which the notices were mailed in New York; but, from the fact that the notice was received by Kemper & Paxton in the early part of October, the court below found that due diligence was used; and there is nothing in that ruling that would justify the interference of this court.

The remaining question is, was defendant notified in time to

Fugitt v. Nixon.

charge him? The time of giving notice is affected by different considerations and circumstances. If the residence of the party is unknown, of course notice is an impossibility. But in such a case it is incumbent on the holder, and all other parties who are bound to give notice, to use reasonable diligence and to make due inquiries as to the actual residence of the party so entitled to notice. What will be due and reasonable diligence in this respect must depend upon the circumstances of the particular case, for no invariable or definite rule can be laid down; and what would be due and reasonable diligence in one case might fall far short in another. (Story on Prom. Notes, § 335.)

The time employed in endeavoring to find the residence or address of the indorser must necessarily be deducted; and laches are only imputable to the holder after failure to give notice, where the residence or address is ascertained. The plaintiff, on the same day on which the same was received, made application to defendant's agent in this State, and also inquired of his acquaintances, as to defendant's residence in the State of Ohio. He did not learn from any of them either the place of his residence or his post-office address. But from all he received the same uniform answer: that defendant was moving to this State—was probably on his way out—and would arrive in a short time. Being unsuccessful in his inquiries, he then did all that remained for him to do — he employed a person to give the necessary notice at the town where the defendant would stop, immediately on his arrival. I am at a loss to perceive how he could have exercised greater diligence or take any other course. He used that reasonable diligence and made the due inquiries which the law required of him.

I think the judgment is right, and should be affirmed. The other judges concur.