ADAM C. DYAS ET AL., Appellants, *v.* CHRIST HANSON, Respondent.

**November 20, 1883.**

| 14 | 363 |
| 38 | 366 |
| 14 | 363 |
| 51 | 248 |
| 14 | 363 |
| 55 | 62 |
| 14 | 363 |
| 59 | 548 |

1. COUNTER-CLAIM. — An answer alleging the failure of the plaintiff to present to the drawer a draft delivered by the defendant to the plaintiff for collection states a cause of action arising on contract within the statute of counter-claims.

2. BILLS OF EXCHANGE — SIGHT DRAFTS — PRESENTATION — EVIDENCE. — Evidence of a custom among merchants to deposit in bank drafts which they have undertaken to collect for foreign customers is inadmissible to excuse a failure to duly present a draft for payment.

3. —— AGENCY. — One to whom a draft is given for collection and who deposits it in bank for collection is responsible for the diligence of the bank in presenting the same for payment.

4. —— A sight draft received for collection against a drawee who resides in the same city must be presented before the close of the succeeding day.

5. —— A draft payable at sight must be presented for payment within a reasonable time.

6. —— PRACTICE. — The question as to what is a reasonable time is one for the court after the facts are determined.

7. —— It is error to submit the question of reasonable time to the jury, but it is not ground for a reversal if the finding of the jury is correct.

8. —— BAILMENTS. — A merchant who, in the usual course of business with a customer, accepts, for collection, mercantile paper from the customer

according to an established usage between the two, is not a gratuitous bailee.

**9. WAIVER.** — He who relies on a waiver must show that it was made with knowledge of the material facts.

APPEAL from the St. Louis Circuit Court, LUBKE, J. *Affirmed.*

THOS. A. RUSSELL, for the appellants : The answer does not set up facts constituting a counter-claim. — *Chaneboret* v. *Cagney*, 10 Abb. Pr. 36 ; *Edgerton* v. *Page*, 20 N. Y. 285. In pleading a counter-claim the defendant must allege the same facts he would be required to allege if he had himself been suing the plaintiffs. — Bliss on Code Pleading, sect. 367, and cases cited; *Holzbauer* v. *Heine*, 37 Mo. 444 ; *Vassear* v. *Livingston*, 13 N. Y. 252 ; *Ritchie* v. *Haywood*, 171 Mo. 362.

BROADHEAD & HAEUSSLER, for the respondent : The facts set up in the answer constitute a cause of action arising on contract. — *Ritchie* v. *Hayward*, 71 Mo. 560 ; *Curtis* v. *Barnes*, 30 Barb. 225 ; *McAdow* v. *Ross*, 53 Mo. 199. Drafts payable on demand, and checks, are governed by the same rules of law in respect to presentment, demand and notice. — Bigelow on Bills (1882), p. 80. The general rule in regard to presentment is, that the bill must be presented within reasonable time, and what will be a reasonable time must depend upon all the circumstances of each particular case. — Story on Bills, 231, and cases cited ; Bigelow on Bills (1882), p. 207, and cases cited ; *Mullman* v. *D. Eguine*, 2 H. Black. 565 (cited at length in Bigelow, 207) ; *Salisbury* v. *Renick*, 44 Mo. 554. Sight drafts must be presented on the day after their receipt at the place where the drawee resides. — *Harker* v. *Anderson*, 21 Wend. 376; *Rosenblatt* v. *Haberman*, 8 Mo. App. 486. The party relying on a waiver of liability must prove that it was made with a full knowledge upon the part of the drawer of the negligence of the holder. — *Bullin* v. *Betcke*, 11 Iowa, 204 ; Story on Prom. Notes, sect. 275, and notes ;

Parsons on Notes and Bills, 601; *Morgan* v. *Peet*, 32 Ill. 281.

THOMPSON, J., delivered the opinion of the court.

The plaintiffs were wholesale merchants in St. Louis, and the defendant was a merchant doing business in the country. For about two years prior to the transaction in controversy the defendant had been in the habit of making purchases of the plaintiffs from time to time, and of remitting to them for credit upon the running account thus kept up, drafts, on other persons for collection. On the 14th of August, 1880, the defendant ordered of the plaintiffs a small bill of goods, amounting to less than $100, and, in a separate letter in the same mail, he sent them a sight draft for $1,100, on the Yeager Milling Company of St. Louis, with this instruction: "Please place same to my credit until called for."

The plaintiffs received these two letters on the 16th of August. They filled the order for the goods, except as to an item of coffee, which they could not fill because they had not the kind ordered. They at the same time placed the draft to the defendant's credit on their books and deposited it for collection in the Bank of Commerce in St. Louis, in which they kept their account. They also, on the same day, advised the defendant that they had received the draft, had placed the same to his credit as requested, and that his order was being filled. This was Monday. The Bank of Commerce allowed the following day, Tuesday, to pass without presenting the draft to the Yeager Milling Company and demanding payment. On that day the Yeager Milling Company was solvent, and if the draft had been presented then, it would have been paid. On Tuesday night the mill of the Yeager Milling Company was destroyed by fire, and the company immediately suspended payment and became insolvent. On Wednesday the draft was presented to the Yeager Milling Company, payment refused, and it

was returned by the Bank of Commerce to the plaintiffs, who immediately advised the defendant by telegraph of its dishonor. He having received a letter from the Yeager Milling Company saying that they would pay it in a few days, wrote to the plaintiffs, advising them to hold it and collect it as soon as they could. They held it more than a month, after which further correspondence took place touching it, between them and the defendant, which we need not set out, the result of which was that the defendant refused to allow the draft to be returned to him, and insisted that the plaintiffs were liable to him for the failure to collect it. In the meantime, the defendant had continued to purchase goods of the plaintiffs on credit until he had purchased an amount nearly equal to the amount of the draft.

For the amount of the goods so purchased, the plaintiffs have brought the present suit. The correctness of their account stands admitted. The only defence we have to consider arises on a count of the answer, which sets up by way of counter-claim the damages which accrued to the defendant by reason of the negligence of the plaintiffs, whereby the amount of the draft was lost to the defendant.

1. It is objected that the matter so set up is not within our statute relating to counter-claims. Rev. Stats., sect. 3522. We take a different view. In our opinion, the undertaking of the plaintiffs to collect this draft was a contractual engagement; their failure to do so with reasonable diligence, if such was the fact, was a breach of this engagement, and consequently, the count of the answer setting up such failure presents a cause of action " arising on contract " within the meaning of the statute. *Empire Transportation Co.* v. *Boggiano*, 52 Mo. 294.

2. Then as to the merits of this counter-claim. The plaintiffs offered to prove an universal custom among the wholesale merchants of St. Louis, on receipt of drafts from their customers and others to deposit the same for collection in bank, just as the plaintiffs did, which evidence the court

excluded.   We think this ruling was right, for two reasons :
1. It was not satisfactorily shown that the defendant had
any knowledge of such a custom.   A custom to collect
drafts in this way might be universal among the wholesale
merchants of St. Louis, and a country merchant might know
nothing about it.   Certainly, the defendant was not bound
to know of the existence of such a custom, nor was there
any presumption springing out of its universality, that he
did know it.   Such a custom, even if known to the defendant,
would not exonerate the plaintiffs, because a custom which
exonerates an undertaker, or contractor, or bailee, from the
consequences of his own or his agent's negligence, would not
be a good custom.   2. But the evidence of custom, such
as was here offered, was wholly irrelevant.   It must be
borne in mind that the plaintiffs did not offer to prove a
custom of banks and collecting agents in  St. Louis
not to present sight drafts for payment on the day after
receiving them ; but they offered to prove that it was
the universal custom among wholesale merchants in St.
Louis, when receiving drafts drawn upon St. Louis, from
their customers for collection, to deposit them in bank for
that purpose.   The defendant might have admitted such a
custom without any prejudice whatever to his counter-claim ;
because the fact that it is customary for a particular class
of merchants to select a particular class of agents to discharge
a particular kind of duty for them, has no tendency what-
ever to exonerate such a merchant from his liability for
the negligence of such an agent.   It would be a new idea in
the law which would exempt the principal from liability
for the acts of his agent merely upon showing that it was
customary to do the particular act through such an agent.
Where, from the nature of the act to be done, individuals
and corporations are obliged to do it through agents, the
law does not thus exonerate them.   It is not only a custom
for a corporation, for instance, to do all its acts through
agents, but from its very nature it can only act through

agents; and yet it would be reversing the whole course of modern law, on the subject of corporate liability to hold that this necessity should operate to exonerate the corporation from liability for the acts of its agents. The question here was not, whether the defendants were personally negligent in placing this bill of exchange in the hands of the Bank of Commerce for collection. It may be granted, for the purposes of this case, that they were not. But when they selected the Bank of Commerce as their agent for that purpose, they became answerable to the defendant for the diligence of such agent, just as any other principal is answerable for the diligence of his agent; and their own personal diligence was wholly an immaterial question. Such a rule would have exonerated the defendant from liability in the case of *Gerhardt* v. *Boatmen's Saving Institution* (38 Mo. 60); because, without doubt, an universal custom, universally known, could have been shown on the part of banks to resort to a notary for the purpose of making demand of the payor of matured paper, and of giving notice to drawers and indorsers. Indeed, such a defence was set up in a case in New York, but without avail. That court said: "It was proved in the progress of the trial that it was usual for bankers to resort to a notary; but there was nothing to show that the custom affected or varied the legal liability of the bank, or its liability for the due performance of all the acts necessary. There was evidence from others that the custom was uniform to hand them to a notary. But practice and usuage of business adopted for their own convenience can not vary the contract between them and their dealers." *Ayrault* v. *Pacific Bank*, 47 N. Y. 574. As this evidence was properly excluded, the instruction which the plaintiffs asked relating to such a custom was, of course, rightly refused.

3. The court instructed the jury in substance that it was the duty of the plaintiffs to present the draft for payment within a reasonable time, and that, if they failed to present

it within a reasonable time, the loss arising out of the failure to collect it must fall upon them. The general rule with regard to the presentment of bills payable at sight is that they must be presented within a reasonable time. *Salisbury* v. *Renick,* 44 Mo. 554. The court, in this case, in effect left it to the jury to say whether the draft had been presented within a reasonable time. We do not understand that this part of the instruction is complained of. It is suggested by the learned counsel for the defendant, on the authority of *Fugitt* v. *Nixon* (44 Mo. 295), and *Bank* v. *Penderoff* (13 Wend. 137), that the question of reasonable diligence in making demand of payment of commercial paper is a mixed question of law and fact, to be decided by the jury. It is, indeed, said by Wagner, J., in the former case: "The presentment of a draft to the drawee must be made in a reasonable time. What is a reasonable time is a question of fact, and depends upon the circumstances of the case." We do not understand that this case goes the length of holding that the question, what is a reasonable time for the presentment of commercial paper is a question which, in all cases, is to be left to the jury. The question would seem in reason to stand on the same footing as the question, what is a resonable time within which to give notice of the dishonor of a bill of exchange or a promissory note to the drawer or indorser; and upon this question, in the same case, the same learned judge proceeds to show that "what is due diligence in giving notice of dishonor is a question of law, where the facts are admitted." And the court proceed to examine the facts of the particular case, and conclude that due diligence had not been used. *Fugitt* v. *Nixon, supra.* The latter of the above cases, *Bank* v. *Penderoff* (*supra*), seems to be one of a limited number of cases which hold that the question, what is reasonable diligence in presenting commercial paper for payment, is a question of fact for the jury. There is, indeed, some conflict of judicial opinion on the question; but the

better opinion, supported by the decisions of the best courts
and the opinions of the most approved writers on nego-
tiable paper, is that, where the facts are clear and uncontra-
dicted, the question is one of law, to be decided by the
court. *Prescott Bank* v. *Caverly*, 7 Gray, 217 ; *Aymar* v.
*Beers*, 7 Cow. 705 ; *s. c.*, 17 Am. Dec. 533 ; *Mohawk Bank*
v. *Broderick*, 10 Wend. 304 ; *Gough* v. *Staats*, 13 Wend.
549 ; Dan. Neg. Inst., sect. 466 ; Byles on Bills, 163 ;
Edwards on Bills, 391. And so as to the time of giving notice
of dishonor. *Brenzer* v. *Wightman*, 7 Watts & S. 264 ; *Bank
of Columbia* v. *Lawrence*, 1 Pet. 578, 583. This view is
much to be preferred, because it results in giving the mer-
cantile community definite rules by which to govern their
actions, instead of remitting the question to the uncertain
discretion of juries. We think then that it was erroneous,
in the clear state of the evidence in this case, to leave the
question to the jury ; but this will not be ground for revers-
ing the judgment, if the jury have decided the question
rightly ; and this is the next point which we shall consider.

The jury must have found that where a bank receives a
sight draft for collection, drawn upon a party having a
place of business in the same city in which the bank is sit-
uated, the bank does not use due diligence if it fail to pre-
sent the draft to the drawee for payment before the close
of the following day. We are of opinion that this conclu-
sion was right as matter of law. It was so held by this
court in the case of a bank check in *Rosenblatt* v. *Haber-
man* (8 Mo. App. 486). And, although there has been
considerable difference of opinion, whether the same meas-
ure of diligence is required in the presentment of sight bills
of exchange as in the presentment of bank checks, the
better opinion seems to be that there is no sound reason
for a distinction. " The fact that one instrument is drawn
upon a bank and the other upon an individual can make no
difference in principle concerning the duty of the holder ;
what will be due diligence in the one case will be due dili-

gence in the other. *Smith* v. *James*, 20 Wend. 192 ; *s. c.*, 32 Am. Dec. 527, per Bronson, J. This distinction was adverted to by our supreme court in *St. John* v. *Homans*, ( 8 Mo. 382, 385 ), where Scott, J., said : " It must be confessed that the inclination of the authorities tends to the support of the principle that bills of exchange and checks are alike in all respects and that the holder of a check is bound to the same diligence as the payee or indorser of a bill of exchange." And he refers to *Harker* v. *Anderson* ( 21 Wend. 372 ), as containing all the learning on the question. The question under consideration in *St. John* v. *Homans* related to a bank check, and Scott, J., proceeded to say : " Had it been a bill of exchange, it would have been the duty of the payee to have presented it for payment the day after it was received." We have no doubt that this *dictum* announced the correct rule. If a delay of a full day, without any excuse therefor, could be indulged by the law, it is difficult to suggest a principle that would not grant the indulgence of a second or even of a third day ; the question would be only a question of degree. The line must be drawn somewhere, and the rule which draws it at the close of the day succeeding the receipt of the paper, in the absence of special circumstances of extenuation, is wise, safe, and certain. The jury were, therefore, right in their conclusion upon the question of diligence in this case, and their verdict cured the error of the court in submitting the question to them.

4. The argument of the plaintiffs' counsel that the plaintiffs exonerated themselves by placing the draft in the bank for collection is, in our judgment, untenable. The defendant was absent ; he had committed a very important matter of business to them, according to his previous course of dealing with them. They were on the ground, and might have demanded payment on the very day the draft was received, which was two days before the bank demanded it. Instead of doing this, they selected their

own method and their own agent for making the collection. The circumstance that the agent they thus selected was a bank does not, upon any principle with which we are acquainted, exonerate them from liability for the negligence of the bank. They are as much answerable for such negligence as they would have been answerable for the negligence of one of their own clerks, to whom they might have committed the same matter of business. It is argued that they are entitled to invoke the rule which has been declared by our supreme court with reference to the liability of banks acting as collecting agents, which exonerates a bank receiving a draft *upon a distant place* for collection, upon the bank showing that it had used due diligence in selecting the proper agent to perform the duty. *Daly* v. *Butcher and Drovers' Bank*, 56 Mo. 94. The opinion of the court in the case just cited shows that the rule there laid down has no application to the case where a bank receives a note or bill of exchange, for collection from a payor who resides at the same place where the bank is located. In such a case, the collecting bank is liable for the default of the agent to whom it chooses to confide the duty of making the demand upon the payor or drawer. *Gerhardt* v. *Boatmen's Saving Inst.*, 38 Mo. 60; *Ætna Ins. Co.* v. *Alton City Bank*, 25 Ill. 243.

It is claimed by the learned counsel for the plaintiffs, that, in respect of the diligence required of the plaintiffs in presenting this bill of exchange they were subject to a less onerous rule of liability than a bank would have been subject to under like circumstances. It is urged that they are in the position of gratuitous bailees, and, accordingly, that the instruction given for the defendant does not state the law correctly, in its application to the facts of the case; because it assumes that the defendant was a regular customer, dealing continuously with the plaintiffs, and, that, by virtue of this fact, he had a right to require at their hands the collection of drafts sent to them, without compensation.

This instruction was as follows: "If it appears from the evidence that the defendant had been dealing with plaintiffs in the purchase of goods for the period of two years, and that defendant was also in the habit of paying for his goods partly in drafts on other persons from time to time, and also of sending drafts on other persons in St. Louis to plaintiffs for collection, and the plaintiffs had been in the habit of collecting the same for defendant from time to time, then it was the duty of plaintiffs to present the draft for payment in a reasonable time, whether the same was sent by defendant to plaintiffs to be applied wholly or in part to the payment for a bill of goods then due or to become due, or was simply sent for collection, the amount to be placed to defendant's credit; and if the plaintiffs failed to present the same within a reasonable time, and in consequence thereof the amount could not be collected, then the loss must fall on the plaintiffs."

We think the instruction entirely correct, both in the abstract, and in its application to the evidence. The evidence unquestionably showed a course of business continuing for two years by which the defendant had purchased goods of the plaintiffs on running account, and had transmitted drafts and checks to them for collection and credit on his side of the account. The fact that the account had been balanced and settled ten days before the draft in controversy was sent for collection had no tendency whatever to show a cessation of this course of business. Such a settlement might take place several times in the course of a year between prudent business men, and the general course of business would be immediately resumed as it had gone on before. This defence was urged in the leading case of *Allen* v. *Merchants' Bank* (22 Wend. 215; s. c., 34 Am. Dec. 289), and it was disposed of by Senator Verplanck in the following language: "It is well settled in this State that there is an implied undertaking by a bank or banker receiving negotiable paper deposited for collection, to take

the necessary measures to charge the drawer, maker, or other proper parties upon the default or refusal to pay or accept. *Smedes* v. *Bank*, 20 John. 372 ; and *s. c.* in this court, 3 Cow. 663 ; *McKinster* v. *Bank*, 9 Wend. 46 ; *s. c.*, 11 Wend. 473. The ground of this rule is, that the acceptance of negotiable paper thus deposited for collection forms an implied undertaking to make the demands and give the notices required by law or mercantile usage for the perfect protection of the holder's rights against all previous parties, for which undertaking the use of the funds thus temporarily obtained, or of the average balances thereof, for the purposes of discount or exchange, forms a valuable consideration. Had we no express authority on this head, I should consider the acceptance by a bank of paper for collection from a customer in the usual course of his business as sufficient evidence of a valuable consideration. The whole ordinary business of a bank with its dealers is one of mutual profit or accommodation, and must be taken together (unless some part is separated by express understanding), and it is not for a bank to allege or for a court to consider (as the chief justice seems to do) that a collection in a particular place must be regarded as a gratuitous favor. If accepted at all, the general profits and advantages of the business of which this may perhaps be an unproductive part, form a good consideration for the undertaking. This, however, is not an open question, after the decision of this court in the two cases against the bank of Utica.'' This language was quoted at length, with approval, by our supreme court, in the case of *Gerhardt* v. *Boatmen's Saving Institution* (38 Mo. 60, 64), and it may with equal propriety be applied to the facts of this case. The plaintiffs and the defendant were dealing together in a continuous course of business, and their relations with each other were not unlike those of a bank with its customers. It was a business of mutual profit and accommodation. The depositing of a single bill of exchange by the defendant

with the plaintiffs for collection, is not to be singled out and viewed as an isolated fact; but the whole course of their business is to be taken together, and when so taken and considered, it is not for the plaintiffs to allege, or for a court of justice to hold, that the receiving and collecting of a bill of exchange is to be regarded as a gratuitous favor. "If accepted at all, the general profits and advantages of the business of which this may perhaps be an unproductive part, form a good consideration for the undertaking."

5. Another question is, whether the defendant has waived his right of action against the plaintiffs for their failure seasonably to collect this draft. It does not appear that when the defendant, on the 20th of August, wrote to the plaintiffs advising them to hold the draft and collect it as soon as they could, he had any knowledge that they had been guilty of any laches in presenting it. Such an instruction, then, can not be construed as a waiver; the rule being that a party relying upon a waiver of liability must prove that it was made with full knowledge of the facts by the party who thus releases his rights. *Commercial Bank* v. *Perry*, 10 Rob. (La.) 61; *s. c.*, 43 Am. Dec. 168; *New Orleans Savings Bank* v. *Harper*, 12 Rob. (La.) 231; *s. c.*, 43 Am. Dec. 226; *Fleming* v. *McClure*, 1 Brev. 428; *s. c.*, 2 Am. Dec. 671; *Tickner* v. *Roberts*, 11 La. 14; *s. c.*, 30 Am. Dec. 706.

6. It was within the sound discretion of the court to allow the defendant to amend the count of his answer which embodied this special defence, by calling it a counter-claim instead of a plea of recoupment. We think the judgment ought to be affirmed. It is so ordered. All the judges concur.