THE STATE TO USE OF E. HAKEMEYER, Respondent, v.
A. M. HELLMAN, Appellant.

St. Louis Court of Appeals, January 5, 1886.

1. The question as to whether chattels, the sale of which is attacked by the vendor's creditors, were delivered within a reasonable time, is a question of fact, where the evidence is as to the circumstances surrounding the transfer.

2. An instruction that there must be an actual and visible change of possession "immediately" after the sale, in order to make it valid, is properly refused in such a case.

3. In such a case, a part of the goods being unstamped tobacco, an instruction that, in determining whether delivery was made within a reasonable time, the requirement of the internal revenue law concerning the delivery of such tobacco to one not having a manufacturer's license, and concerning the keeping of a sign on the building, might be considered, is erroneous.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Reversed and remanded.*

ALBERT ARNSTEIN, for the appellant: A sale of personal property, unless followed by an open and visible change of possession within a reasonable time, regard being had to the situation of the property, is fraudulent and void as against creditors. Rev. Stat., sect. 2505; *Claflin v. Rosenberg*, 42 Mo. 439; *Lesem v. Herriford*, 44 Mo. 326. What is a reasonable time, is a question of law for the court. *Wright v. McCormick*, 67 Mo. 426-430; *Stern v. Henley*, 68 Mo. 262-263; *Stewart v. Nelson*, 79 Mo. 524; *Dyas v. Harrison* 14 Mo. App. 363. A sale of personal property, unaccompanied by a delivery, and a visible change of possession within a reasonable time, is void as to creditors, even though a delivery be made before a levy by the creditors. *Franklin v. Gumersell*, 9 Mo. App. 84; s. c., 11 Mo.

App. 306; *Chenery v. Palmer*, 6 Cal. 119; *Cabanne v. Bay*, 10 Mo. App. 594.

BODLEY & WIND, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

Ullman, Bloom & Company instituted proceedings by attachment against Post & Grawe, who kept a cigar and tobacco store at 920 Broadway, St. Louis, and caused to be seized a part of the stock found on the premises, which was claimed in due form under the statute, by the present beneficiary plaintiff. The present defendants are sureties on the indemnifying bond given by the attaching plaintiff. The verdict and judgment were for the plaintiff, in the court below. .

There was testimony tending to show that the plaintiff had been in the employ of Post & Grawe, as a porter, for about nine years, and that in 1876 he loaned them several sums amounting to five hundred dollars, for which they gave him their notes. These notes were renewed from time to time, so that on January 2, 1885, he held their two notes, one for four hundred ·dollars and the other for one hundred dollars, having five and nine months to run, respectively. On that day, in pursuance of a proposal made a few days before and held under advisement, Post & Grawe sold their business and stock in trade, excluding the unmanufactured tobacco on hand, to the plaintiff, for the amount of their notes, which were thereupon surrendered to the vendors. The goods sold were estimated to be worth from three hundred and fifty to four hundred dollars, and a horse and wagon included in the sale, to be worth seventy-five dollars. There was a sign bearing the firm name of Post & Grawe on the top of the house, another on the awning in front, and what the witnesses call a "V" sign in another conspicuous place. On the evening of Saturday, January 3, Post, upon the plaintiff's request, ordered the painting of a sign for the plaintiff. This sign was brought to the

store on Monday, the fifth, with a caution that it must be carefully handled, as the paint was still fresh. It was placed with the face toward the stove and there left to dry. On Tuesday, the sixth, it was placed upon the "V" sign, so that the whole was made to read: "Ernest Hakemeyer, successor to Post & Grawe." The other signs of Post & Grawe were not removed until on the ninth, somewhat earlier than the levying of the attachment on the same day. There were some other facts relating to the disposition of the signs, and other indications of a change of owner- ship, about which there were considerable conflicts in the testimony. It was explained that the sign on top of the house could not be removed sooner than it was, because the roof was covered with ice.

The court gave several instructions for the plain- tiff, clearly setting forth the requirements of law touching an open, visible, and notorious change of possession, in order to the validation of a sale of chattels, as against creditors of the vendor. We need not remark further upon these instructions, since they simply repeat the terms which have long been settled by our supreme court in parallel cases. The defend- ants complain, however, that the court erred in submitting to the jury alternative hypotheses of fact upon which they might determine the question of a change of possession "within a reasonable time, regard being had to the situation of the property," because what is a reasonable time, is always a question of law for the court, and is not a proper one for the jury. But the learned counsel seem to overlook the fact that there was in this case a good deal of conflicting testi- mony on the indications of a reasonable time, or the contrary. It is only where the facts are undisputed, that the rule applies, as stated for the defendants. This qualification distinctly appears in the cases cited in their behalf. *Wright v. McCormick*, 67 Mo. 426; *Stern v. Henley*, 68 Mo. 263; *Stewart v. Nelson*, 79 Mo. 524; *Franklin v. Gumersell*, 9 Mo. App. 84; *Dyas v.*

*Hanson*, 14 Mo. App. 363. There was no error in this respect.

The court properly refused two instructions asked for by the defendants, to the effect that, in order to a valid sale, there must have been an actual and visible change of possession "immediately" after the sale. "Immediately" is not the word chosen by the law. It may be something very different from what the statute does express, viz.: "In a reasonable time, regard being had to the situation of the property." Rev. Stat., sect. 2505.

But it is not quite so clear that the court was right in giving the two following instructions for the plaintiff:

"The jury are instructed that, if they find from the evidence that Post & Grawe were manufacturers of tobacco at 920 North Fifth street, or Broadway, in the city of St. Louis, and continued to be such on the second day of January and on the ninth day of January, and further find that at such times they had on hand any unmanufactured or unstamped tobacco, they were required by the United States revenue laws to remain in the open and actual possession of such unmanufactured and unstamped tobacco, and could not at such times give to Hakemeyer the sole and exclusive possession of the premises; and the jury may consider this in determining whether there was such a delivery as described in instruction number one."

"The jury are instructed that, if they find from the evidence that Post & Grawe were manufacturers of tobacco at 920 and 922 North Fifth street, in the city of St. Louis, Missouri, from January 1 to January 9, 1885, inclusive, they were required by the United States revenue laws to keep on the side or end of the building wherein the business was carried on, so that it could be distinctly seen, a sign giving their full name; and that may be considered by the jury in determining whether or not there was a *bona fide* sale by Post & Grawe to Hakemeyer."

We can discover no reason for the giving of these

instructions, unless it be upon the supposition that a compliance with. the United States revenue laws might. have been inconsistent with a prompt and open delivery, by changes of signs and otherwise, of the stock and business sold. In other words, it was possible for the jury to find that the part'᠁ could not comply with the state statute without a violation of the federal law, in which event, although they might find that there was no proper compliance with the statute, yet, in the superior authority of the United States revenue laws, there would be a sufficient excuse for such noncompliance, and the sale should be sustained. This legal consequence, considered in the abstract, might be correctly predicated. But nothing appears in this case to which it can properly apply. If, as the plaintiff seems to aver, there was a complete · delivery at least. as early as the ninth of January, notwithstanding the revenue laws, why might there not have been one just. as good, on the second or third ? There was no change, in the meantime, with respect to the revenue laws. If they interposed no obstacle on the ninth, they offered none on the day when the sale was made. It. may be possible that all the unmanufactured tobacco was. disposed of before the ninth, but this does not clearly appear from the record. But, in point of fact, there was no such conflict of authority at any time. The vendors had a perfect right to retain every token of their ownership and manufacturing privileges, as to the unmanufactured tobacco, while the vendee had the same right to make as conspicuous as possible the signs of his proprietorship in what he had purchased. We do not undertake to decide that whatever delay there may have been in adjusting the signs, etc., was. or was not justified by the surroundings, independently of revenue law considerations. That was for the jury to determine, under the instructions given. But we think that, upon the facts shown, it was not proper to encumber the jury with the inquiry submitted in these. instructions, without a fuller explanation as to what

particular acts of delivery might be modified or wholly excused by operation of the revenue laws. As the instructions are framed, there was danger of their misleading the jury into a supposition that, in view of the revenue requirements, any indefinite delay in making a visible transfer from vendor to vendee would be reasonable, regard being had to the situation of the property.

For error in giving these instructions, the judgment will be reversed and the cause remanded. All the judges concur.