JAMES H. WEAR ET AL., Plaintiffs in Error, v. GEORGE T. LEE ET AL., Defendants in Error.

### St. Louis Court of Appeals, May 3, 1887.

1. PRACTICE—SUCCESSIVE VERDICTS.—No number of successive verdicts, for the same party in a suit, will make a finding in his favor conclusive where such finding is erroneous as a matter of law.

2. ———— PAYMENT—EVIDENCE.—The defendant's statement that he had paid the account sued on, is not the statement of a fact, but of a conclusion of law, where the uncontroverted facts relied on as showing payment do not constitute a payment in law.

ERROR to the Carter County Circuit Court, JOHN G. WEAR, Judge.

*Reversed and judgment.*

SAMUEL N. HOLLIDAY and WILLIAM N. NALLE, for the plaintiffs in error: The court is not limited to granting one new trial, "when the jury, after being properly instructed by the court, misconceive, or entirely disregard, the instructions." *The State ex rel. v. Adams*, 76 Mo. 605, 609, and cases cited. The taking of a promissory note, or check, for an account is not payment of the account, unless expressly so agreed at the time. *Appleton v. Kennon*, 19 Mo. 637, 640; *Ashdown v. Woods*, 31 Mo. 465, 466; *Howard v. Jones*, 33 Mo. 583, 587; *Riggs v. Goodrich*, 74 Mo. 108, 112; *Wiles v. Robinson*, 80

Mo. 47, 52 ; *The Kimball,* 3 Wall. [U. S.] 37, 45 ; *Peter v. Beverley,* 10 Pet. 532, 568. Taking a note for an account is not sufficient evidence to authorize the submission of the question of payment to the jury. *McMurray v. Taylor,* 30 Mo. 263, 267 ; *Doebling v. Roos,* 45 Mo. 150, 152. The burden of proving that an express agreement was made, extinguishing the account, or note, by note, or check, devolves upon the defendants, who set it up. *Powell v. Charless,* 34 Mo. 485, 495. Payment is only made in cash, or in something agreed to be accepted as cash. *Yarnell v. Anderson,* 14 Mo. 619, 624.

CHARLES A. DAVIS and C. D. YANCEY, for the defendants in error : Only one new trial shall be allowed to either party. Rev. Stat., sect. 3705. There is no incompatibility in pleading a general denial, and in pleading payment of the debt sued for, because, if it was paid, the defendants did not owe it, and the pleas were consistent. *Nelson v. Brodhack,* 44 Mo. 596 ; *Rhine v. Montgomery,* 50 Mo. 566 ; *McAdow v. Ross,* 53 Mo. 199. Neither the St. Louis National Bank, nor the plaintiffs, presented the check drawn on Loker Brothers' Bank before, or after, its failure. The money was in that bank, subject to the defendants' check, when it was drawn, and the bank continued paying money over the counter nearly forty-eight hours after the plaintiffs received the check, and the negligence of the holder, in failing to present it for payment within a reasonable time, caused the total loss of the sum drawn for, and the drawer was discharged. 3 Kent's Com. 104 ; *Little v. Bank,* 2 Hill [N. Y.] 425 ; *St. John v. Homans,* 8 Mo. 382 ; Daniel on Neg. Inst., sects 1590, 1591 ; *Ins. Co. v. Bank,* 25 Ill. 243 ; *Gebhart v. Boatmen's Savings Inst.,* 38 Mo. 60 ; *Fugitt v. Nixon,* 44 Mo. 295 ; *Daly v. Bank,* 56 Mo. 94.

THOMPSON, J., delivered the opinion of tne court.

This is an action at law on a merchant's account. The answer is a general denial, and a separate paragraph

setting up payment. A trial before a jury resulted in a verdict and judgment for the defendants, and the plaintiffs prosecute a writ of error in this court.

The suit was originally commenced on the ninth day of September, 1881. The cause has been tried three times, and each trial has resulted in a verdict and judgment for the defendants. The first trial took place on the eighteenth day of April, 1883. From the judgment rendered at this trial the plaintiffs appealed to the supreme court, which court reversed the judgment and remanded the cause, for an error of law. *Wear v. Lee*, 87 Mo. 358. The second trial took place on the thirteenth day of April, 1886, and the court, at the same term, granted a new trial upon grounds which do not appear. The third trial took place on the twelfth day of October, 1886, and, from the judgment then rendered, this writ of error is prosecuted.

The evidence at this trial adduced by the plaintiffs was to the effect that the plaintiffs were wholesale merchants doing business in St. Louis, and that the defendants were retail merchants doing business at Mill Springs, Missouri; that the defendants had, in the course of trade, incurred an indebtedness to the plaintiffs, for which they had given to the plaintiffs a promissory note, signed by M. A. Lee, for the sum of $218.01, which note fell due on October 5, 1878; that the plaintiffs had procured this note to be discounted by their banker, the St. Louis National Bank; that, on the twenty-fourth day of September, 1878, George T. Lee, one of the defendants, being then in St. Louis, serving as a juror in the federal court, handed to the plaintiffs a draft upon the banking house of Loker & Brother, of St. Louis, signed by M. A. Lee, to be used by the plaintiffs in taking up the said note, which, it is to be borne in mind, did not mature for eleven days thereafter; that, on the afternoon of the same day, the plaintiffs, in the usual course of their business, deposited this draft with their banker, the St. Louis National Bank, for collection

and credit, and at the same time, by their own check, took out of the bank the said note of M. A. Lee for the same amount; that the banking house of Loker & Brother failed on the following day—at what hour does not distinctly appear, but before the close of banking hours—whereby the check was never paid. Whether it was ever presented for payment by the St. Louis National Bank, either through the clearing house, or from the counter, does not appear. The evidence adduced on behalf of the plaintiffs, also, tended to show that, on the twenty-fifth of September, they sent to the hotel of George T. Lee, and notified him of the failure of Loker & Brother, whereby his check had become worthless, and informed him that they should look to him for the payment of the note; that he came to their store and had a conference with them about the matter, in which he stated that he was in St. Louis in attendance upon the United States court as a juror, where he would be several days; that he would do something for the plaintiffs while he was here, but was afraid that he could not pay the whole amount at that time, as he had quite a large amount on deposit with Loker & Brother, and the failure of that concern would embarrass him; that, on October 3, 1878, he again came to the plaintiffs' store, purchased a bill of goods, and paid the plaintiffs one hundred dollars on the note, and then remarked, for the first time, that he did not know whether he ought to be held for the full amount of the note, observing that Loker & Brother were open and doing business on the twenty-fourth of September, the day on which he gave the plaintiffs the draft, and that if the plaintiffs had sent down to collect the draft on that day, they could have gotten the money; that the representative of the plaintiffs then told him that the usual and customary procedure, with all business houses in St. Louis, was to deposit in their respective banks of deposit all checks on other banks received by them in the course of business; that the plaintiffs had followed

this custom, and deposited his draft along with others, at the usual hour of deposit, on the day that he gave it; that the representative of the plaintiffs then "looked Mr. Lee squarely in the eye," and told him that if he was going to make any trouble about the payment of that note, he wanted to know it then and there; that Mr. Lee said, "No, of course not," that he could not pay it all just then, but would pay one hundred dollars, and send the balance from home as soon as he could. The plaintiffs' evidence, also, showed that, on October 22, 1878, the defendants mailed them a draft for the balance due on the note, in a letter running in the following language: "Enclosed find draft for one hundred and eighteen dollars, for which please send receipt and oblige." The plaintiffs applied these two payments of the defendants, for one hundred dollars, and one hundred and eighteen dollars, respectively, in payment of the note already spoken of, and, as the second draft was for the amount of the balance due on the note, the plaintiffs cancelled the note and returned it to the defendants, sending to them at the same time the following receipt for the same:

"St. Louis, October 23, 1878.

"Received of M. A. Lee & Co., Mill Springs, Missouri, per favor 22nd inst., dft. for $118\frac{1}{100}$ dollars for bal. for note due Oct. 5. Amt. paid, $118.01. Amt. Disct., $——. Total credit, $118.01. We enclose note cancelled. J. H. WEAR, BOOGHER & Co.,

"By HOLLIDAY."

The defendants continued to purchase goods of the plaintiffs during the remainder of the year, 1878, and to make remittances, from time to time, on account of successive purchases, the last of these purchases being in December, 1878. On January 1, 1879, the defendants sent to the plaintiffs by mail a draft for $192.68, in a letter which ran as follows: "Enclosed find draft for $192.68, balance on account, except the two hundred and eighteen dollar draft. Now, if you won't accept any

compromise and nothing will do you but a law-suit, the sooner you sue and have the matter tested the better." This draft was collected and credited upon the defendants' account. To this letter the plaintiffs replied, explaining to the defendants that this draft did not liquidate the balance of the account. On January 15, the defendants replied to their letter, demanding of the plaintiffs a corrected statement. The plaintiffs wrote another explanation of the account to the defendants, and this explanation had the result that, on February 17, 1879, the defendants wrote to the plaintiffs, enclosing another draft for one hundred and nine dollars. This letter ran thus: "Enclosed find draft for one hundred and nine dollars, being balance due you from us. Please send receipt and oblige." This last remittance left the sum of $218.06 still due the plaintiffs by open account, for which this action is brought. This balance, according to the testimony given on behalf of the plaintiffs, has no connection whatever with the amount for which the two hundred and eighteen dollar note was given. The correctness of this account is substantially admitted by the defendant, George T. Lee, in his testimony. He testified that he did not know, certainly, but believed that the account of the plaintiffs, as presented, showed the amount of goods he had bought of them, but claimed that he had paid it all, and that nothing remained unpaid thereon.

Aside from this, the defendants' evidence, which consisted entirely of the testimony of George T. Lee, was to the effect that the check of $218.01, on Loker & Brother, was given by him to the plaintiffs about ten o'clock in the morning, and that, about half-past two of the following day, he heard, whilst in the court room, that the bank of Loker & Brother had broken, and was closed. He denied that he had thereafter agreed to pay the note for $218.01, due on October 5, 1878, and stated that the two checks, the one for one hundred dollars, given on October 3, 1878, and the one for one hundred

and eighteen dollars, sent on October 22, 1878, were not given in payment of the note, but were given as payments on the account sued on.

There was no evidence in the case tending to show that, when George T. Lee gave to the plaintiffs, on September 4, 1878, the draft on Loker & Brother, for $218.01, it was agreed that this draft should be accepted by the plaintiffs, in payment of the note for that amount due in bank on October 5, following.

The verdict of the jury, rendered for the defendants, was in flagrant disregard of the law and evidence. The only question contested was, whether the balance of the account sued for had been paid. The burden of proving payment was upon the defendants. *Yarnell v. Anderson*, 14 Mo. 619. They sustain this burden by proving that, on September 4, 1878, they delivered to the plaintiffs a check for $218.01, on their bankers, Loker & Brother, which check was never paid, in consequence of the failure of these bankers during business hours on the following day. The giving of this check to the plaintiffs was not payment, since there was no agreement that they would take it as payment, and run the risk of its being paid. *Commiskey v. McPike*, 20 Mo. App. 82 ; *Riggs v. Goodrich*, 74 Mo. 112 ; *Leabo v. Goode*, 67 Mo. 126 ; *Howard v. Jones*, 33 Mo. 583 ; *McMurray v. Taylor*, 30 Mo. 263 ; *Citizen's Bank v. Carson*, 32 Mo. 191 ; *Appleton v. Kennon*, 19 Mo. 641. The giving of the check did not prevent the plaintiffs from maintaining an action for the amount for which the check was given, unless they were negligent in presenting it for payment, unless its non-payment was the result of such negligence, and unless, further, the defendants were actually prejudiced thereby. *Chouteau v. Rowse*, 56 Mo. 67 ; *Morrison v. McCartney*, 30 Mo. 183. No such negligence was shown in the present case, nor was any evidence given tending to show it. The plaintiffs' evidence was to the effect that, after dinner on the day the check was given, they deposited it for collection at the

customary hour with their own bankers, according to the custom pursued by nine-tenths of the business men of St. Louis. It is true that if the plaintiffs' bankers had been negligent in presenting the check for payment, the plaintiffs would have been answerable for such negligence. *Dyas v. Hanson*, 14 Mo. App. 363. But, according to the decision of the supreme court in this case, on a former appeal, the plaintiffs' banker had until the close of banking hours on September 25, within which time to present the check, and, if the banking house of Loker & Brother failed in the meantime, the loss would fall on the drawers of the check. *Wear v. Lee*, 87 Mo. 358. The undisputed evidence is, that the banking house of Loker & Brother did fail in the meantime.

Another consideration must be attended to. There is not a particle of evidence tending to show that the defendants were prejudiced by the non-payment of the check. For aught that appears, Loker & Brother may, after closing their doors, have liquidated their debts, including the deposit of these defendants, in full. The rule of law is, that delay by the holder of a check, in not presenting it for payment, does not deprive him of recourse against the drawer in case it is not paid, unless the drawer shows that he has sustained injury in consequence of such delay. *Morrison v. McCartney*, 30 Mo. 183; *Chouteau v. Rowse*, 56 Mo. 65; *Keene v. Beard*, 8 Com. Bank [N. S.] 372; *Emery v. Hobson*, 63 Me. 32; *Stewart v. Smith*, 17 Ohio St. 82; *Smith v. Jones*, 2 Bush [Ky.] 103; *Woodin v. Frazee*, 6 Jones & S. 190. If, under the circumstances of this case, the defence of payment were allowed to succeed—if the defendants are to be totally exonerated by the failure of the plaintiffs to present the check for payment on the very day on which it was delivered to them—then, to use the expressive language of Mr. Justice Story, they will, for aught that appears, "pocket both the original consideration and their funds in the hands of the banker,"

and "be enriched at the expense of the holder of the check." *Matter of Brown*, 2 Story R. 516.

The conclusion of law upon the undisputed evidence, therefore, is, that payment of the note was not made by the delivery of the check ; and, as the correctness of the account is proved by the plaintiffs, and substantially admitted by the defendants, and as no other payment of the balance sued for is claimed by the defendants, it is our duty to end this protracted litigation and put a stop to further experiments with justice by capricious juries, by entering judgment here for the plaintiffs.

The question, what is a reasonable time within which to present a check or draft for payment is, where the facts are clear and uncontradicted, a question of law for the court. *Dyas v. Hanson*, 14 Mo. App. 363. If it is submitted to a jury and they decide it rightly, their verdict will be permitted to stand (*Dyas v. Hanson*, 14 Mo. App. 363) ; but if they decide it wrongly, their verdict will not be permitted to stand. In such a case they are to be deemed as having " erred in matter of law," within the meaning of section 3705, Revised Statutes, which prescribes that " only one new trial shall be granted to either party except * * * where the triers of the fact shall have erred in matter of law." In this case the court instructed the jury for the plaintiffs, by giving them the proposition of law to which, as the supreme court held on a former appeal, the plaintiffs were entitled, namely, that, where the payee, to whom the check is delivered by the drawee, receives it in the same place where the bank on which it is drawn is located, he may preserve recourse against the drawer, by presenting it for payment at any time before the close of banking hours on the next day, and if, in the meantime, the bank fails, the loss will be the drawer's. *Wear v. Lee*, 87 Mo. 358. But the jury, by their verdict, have refused to apply this principle to the undisputed evidence, and have accepted instead the general statement of Mr. Lee,

as a witness, that the account sued on had been paid, which, in the state of the evidence, must be regarded as the statement of a mere conclusion of law. This was plainly an error of law. In so doing, they have, also, returned a verdict against the instructions of the court, and no* number of such verdicts of successive juries can change the law, or deprive the courts of jurisdiction to administer the law.

The judgment will be reversed, and judgment entered here for the plaintiffs, for the sum of $218.01, with interest at six per cent. per annum, from the ninth day of September, 1881, the date of the filing of their petition in this suit. It is so ordered. Judge Rombauer concurs. Judge Lewis is absent.