*Durretts* vs. *Hook.— St. John* vs. *Homans.*

### ST. JOHN *vs.* HOMANS.

1. On the 16th of February, 1842, St. John drew his check on the Bank of Missouri for $1,000. On the 24th of same month the check was presented to the Bank for payment, which was refused, except in the bills of the State Bank of Illinois. At the time the check was drawn St. John had on deposite in the Bank of Missouri, $1702 69, in bills of the State Bank of Illinois, and the Bank of Illinois. On the 27th of the same month he withd. ew his effects from the Bank, they having depreciated in value between the delivery of the check and its presentment for payment. All the parties to the check resided in the city of St. Louis. *Held:* that the holder of the check could not, under these circumstances, recover the amount of the check from the drawer.

2. The holder of a check should use due diligence in presenting the same for payment, and if the drawer sustains any loss or injury from the want of such presentment, he will be discharged.

*St. John* vs. *Homans.*

3. It is not necessary, in order to discharge the drawer of a check for want of due presentment, that he should have *money* in the hands of the drawee at the time of drawing the check. It is sufficient that he had *property* in the hands of the drawee.

4. The drawing of a check is not a transfer or assignment of the amount for which it was drawn to the holder.

ERROR to St. Louis Court of Common Pleas.

Todd *and* Krum, *for Plaintiff.*

1. The evidence proves that St. John was discharged from all liability on the check, because of the delay in presenting it for payment.—Byles on Bills, 123, 124; Bailey's Bills, 229, 2d Amer. ed., 1836; Chitty on Bills, 384, 419, 465, 545, 9th Amer. ed.; 4 Starkie's Ev., part 4, p. 225; 21 Wendell's Rep., 372.

These authorities show that the rights, duties and liabilities of parties to checks and inland bills of exchange are one and the same, and that the drawer of a check is discharged from liability thereon (the drawer, drawee and holder living in the same town, as in this case,) unless the check be presented for payment on the day next after its drawing and delivery, and if not then paid, due notice thereof given to the drawer.

2. The evidence does not excuse the delay in the presentment of this check for payment.—4 Cranch Rep., 141; 10 Peters' Rep., 572; Chitty on Bills, 9th Amer. ed., 389, 477; Byles on Bills, 167, 168; Story on Bills, sec. 367, 370.

These authorities show that due presentment and notice of non-payment are indispensable to fix the liability of a drawer, if he have *any effects* in the hands of his drawee—or there is a fluctuating balance between them—or if the drawer has reason to expect his check will be paid or can be exposed to any loss by the omission to duly present and give notice in case of non-payment.

There must be fraud in the drawing, and no exposure to injury for want of due presentment and notice to excuse the same.

3. The withdrawal by St. John, of his funds, from the Bank, after the protest of the check, was rightful, and gave no right of action to the holder of the check.—Chitty on Bills, 384, 465, 466; 6 Wend. Rep., 658; 1 Term Rep., 408.

These authorities show that the holder of a bill of exchange makes it his own, and can neither sue the drawer on the bill or on the original consideration, or otherwise, if he omit due presentment and notice of dishonor, in case of dishonor, to the drawer, when entitled to it—as, against the drawer, the holder suffers a total loss.

Bogy, *for Defendant.*

The defendant insists that the judgment ought to be affirmed.

1. Because the check was payable in legal currency, and nothing else, and the drawer had no funds to meet it in bank, and was consequently not injured by the omission of the holder to present it immediately.

2. The drawing of the check operated as a transfer to the holder of one thou-

sand dollars on deposit in bank, and he is liable to the holder for the value of the funds so withdrawn by him.

3. If a check is not presented in due time, and the drawee should fail before it is presented for payment, the drawer is discharged; but if the drawer is not injured by the delay, the rule is different.—Chitty on Bills, 421; 3 Kent's Com., 88, 89; Barn. & Cress., 388, or 17 Com. Law Rep.

4. Checks are transferable, and are, strictly speaking, not due before payment is demanded, in which particular they differ from bills of exchange or promissory notes payable on a particular day.—Chitty on Bills, 546.

5. The judgment below was for the value of the currency at the time of present-ation, and as the drawer was not in the least injured by the delay in the present-ation of the check, the judgment should not be disturbed.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of assumpsit brought by the defendant in error against the plaintiff in error, on a check drawn by the latter on the Bank of the State of Missouri, for one thousand dollars. The check was delivered to Carter & Smith on the day it was drawn, and by them was transferred on the same day to the defendant in error, as cashier of the Perpetual Insurance Company. The check was drawn on the 16th February, 1842, and was presented for payment on the 24th of the same month, and payment by the bank was refused except in the bills of the State Bank of Illinois. On the same day it was presented to the drawer, who refused to pay it, and it was protested for non-payment, and notice thereof given. It appears that the drawer had on deposit in the Bank of Missouri at the date of the check $1702 69, in bills of the State Bank of Illinois, and Bank of Illinois. The said sum remained with said Bank for more than ten days after the date of the check, to be paid out to the defendant's order, in bills of like kind and not in gold or silver. On the day the check bears date, the drawer placed in the bank $1000 in bills of the State Bank of Illinois, with which he was credited as a special deposit. At the time the check was drawn, the St. Louis Perpetual Insurance Company received on general deposit as currency, the bills of the State Bank of Illinois, and Bank of Illinois, and continued to do so up to the 24th day of February, and that said company paid out said bills as currency, at their nominal value in ordinary business transactions, or checks drawn on said company. On or about the 24th February, 1842, the said Perpetual Insurance Company gave notice that the bills of the State Bank of Illinois would not be received except on special deposit. That said company continued to receive the bills of the Bank of Illinois on general deposit, and to pay the same out as currency at the nominal value of said bills until after the bringing of this suit. That the said Insurance company, at the date of the check, and up to the time of the commencement of this action, was employed as an office of discount and deposit in the city of St. Louis, and in the daily practice of receiving on deposit, and paying out, large sums of money. The plaintiff below received the check as cashier of the Perpetual Insurance Company. The Bank of Missouri passed a resolution, that after the

*St. John vs. Homans.*

16th February, 1842, the notes of suspended banks would not be received on general deposit. All the parties to the check resided in St. Louis. When the check was drawn, and for several days thereafter, the bills of the State Bank of Illinois and Bank of Illinois were twenty per cent. below par in St. Louis. On the 24th of February, the bills of said banks were thirty per cent. below par. The defendant below at the time of drawing, and at no time before said check was presented for payment, had any other funds in the bank than those above mentioned, and on the 27th February, 1842, he withdrew his deposit from the said bank.

The parties made an agreed case, and upon the foregoing state of facts, the court below gave judgment for the defendant below for $700.

This case involves the character and qualities of a check. All the elementary writers agree in holding that a check is like a bill of exchange. But a difference of opinion is entertained in relation to the degree of diligence necessary to be employed by the holder, in order to retain his recourse against the drawer, in the event of its being dishonored. Some, impressed with the impolicy of multiplying anomalies in the law, which serve to embarrass the application of general rules, maintain that the holder of a check is bound to the same diligence as the holder of a bill, and that whatever laches will discharge the drawer of a bill, the same will in like manner discharge the drawer of a check. Others maintain, that unless the drawer is injured by the delay in presenting a check for payment, he is not discharged by the negligence of the holder. These would throw the *onus* of proving the injury caused by the neglect of the holder, on the drawer, in an action against him, contrary to the rule in actions on bills of exchange, in which parties endeavoring to obviate the effect of negligence are obliged to show that the defendant has sustained no injury in consequence of it. It must be confessed, that the inclination of the authorities tend to the support of the principle, that bills of exchange and checks are alike in all respects, and that the holder of a check is bound to the same diligence as the payee or endorsee of a bill of exchange.

Without a specific reference to the authorities maintaining the different views above set forth, it will be sufficient to refer to the case of Harker *vs.* Anderson, 21 Wendell, 372, as containing all the learning on this question. The opinion of the laborious and enlightened judge therein delivered, contains a review of all the American and English authorities, and an effort is made to show that they may be reconciled in support of the principle for which he contended, that the analogies between bills and checks were perfect and without exception.

In the case under consideration the parties to the check resided in the city of St. Louis; had it been a bill of exchange, it would have been the duty of the payee to have presented it for payment the day after it was received. It was not, however, presented until eight days after it was delivered; and subsequently the drawer withdrew his effects from the bank, they having depreciated in value between the delivery of the check and its presentment for payment.

It is urged by the defendant in error, that the notes on deposit were not money, and the plaintiff in error, consequently, could sustain no injury in consequence of the laches of the holder of the check. It cannot be maintained that the drawer of

a bill or check should have in the hands of him on whom he draws, money or cash, in order to exact due diligence from the holder of the bill or check. In the absence of all authority on this subject, reason would dictate, that the drawer is as much exposed to loss from the want of diligence in the holder when he has property or effects in the hands of the person on whom he draws, as when he has money. But there is no foundation for this position in authority: the contrary is maintained. (Chitty on Bills, 469.) Nor can it be maintained, as was contended, that the mere act of drawing the check was an assignment of the amount for which it was drawn to the bearer.—Mandeville *vs.* Welch, 5 Wheaton, 286.

Here, then, is a case, in which it is admitted that the drawer has sustained a loss. Had the check been presented for payment the day after it was delivered, that loss might have been avoided. It was not done. Then, whether a check is to be regarded in all respects as a bill of exchange or not, the defendant in error has not shown a right to recover.

Judgment reversed.