THE FAMOUS SHOE & CLOTHING COMPANY, Appellant,
v. WILLIAM P. CROSSWHITE *et al.*,
Respondents.

St. Louis Court of Appeals, November 9, 1892.

Bank Checks: NEGOTIABILITY. An ordinary bank check, not expressed to be for value received, is not a negotiable instrument in the broad sense which protects a transferee when the check has been fraudulently procured.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED (*and certified to the Supreme Court*).

*W. C. & James C. Jones,* for appellant.

*C. P. & J. D. Johnson,* for respondents.

BIGGS, J.—This is an action to recover the amount of a bank check drawn in the usual way by the defendants, and payable to one Herman Heckle, or order. The person to whom the check was delivered transferred it for value to the plaintiff. The cause was submitted to the court on an agreed statement of facts, and judgment was entered thereon for the defendants. The agreed statement is in itself a concise statement of the case, and presents the points for decision. It is as follows:

"*First.* The plaintiff is now, and at the dates hereinafter stated was, a corporation engaged in carrying on a merchandising business in the city of St. Louis; and the defendants are now, and were at the said times, copartners under the firm-name of Crosswhite, Patton & Rubey, and engaged in buying and selling horses and mules in the said city.

"*Second.* The Mullanphy Savings Bank is, and was at the said times, a corporation doing a general banking business in the said city, with which defendants, under their firm-name, kept their banking account, against which they, from time to time, drew checks.

"*Third.* On or about the twenty-seventh of October, 1890, one Herman Wilke represented to defendants that his name was Herman Heckle, and that he was the owner of two mules then and there in his possession, and which he then and there, under said assumed name, sold to defendants at their said place of business, and in payment therefor defendants drew and delivered to the said Wilke, under the said assumed name, their check as copartners on the said Mullanphy

Savings Bank, which said check is hereto attached and made a part of this agreed statement.

"*Fourth.* The said mules were not the property of the said Herman Wilke, but had been, previous to said date, stolen by him from one John Heckle in the state of Illinois, and brought to the said city of St. Louis, although that fact was not known to defendants at the time of the purchase of the mules by them from the said Wilke, and of the drawing and delivering of said check to him.

"*Fifth.* It was then and there the custom of the said Mullanphy Savings Bank, as well as of all other banks of the city of St. Louis, to require persons presenting checks drawn upon it, if unknown to its officers or agents, to identify themselves to the said bank before paying the amount called for by the check. This custom was then and there well known both to the plaintiff and the defendants, and the said Mullanphy Savings Bank would not have paid the said check to the said Wilke without his being known or identified to the said bank or its officers as Herman Heckle, the payee therein named, if he had presented the same to the said bank for payment.

"*Sixth.* The defendants gave the said check to the said Wilke in payment of said mules, because they did not know him personally, and because they knew of the custom of said bank, and that he would have to be known or identify himself to the said bank or its officers before the amount of said check would be paid to him by the said bank.

"*Seventh.* After delivering said check to the said Wilke the latter left the defendants' premises, and his whereabouts became unknown to the defendants; and shortly thereafter and upon the same day defendants ascertained that the said mules, sold by the said Wilke, as aforesaid, had been stolen by him, and thereupon

directed the said Mullanphy Savings Bank not to pay said check when presented for payment.

"*Eighth.* Afterwards, to-wit, on or about the twenty-eighth day of October, 1890, the possession of said mules was claimed by and delivered to the said John Heckle, the owner thereof.

"*Ninth.* After receiving said check, and on the same day, the said Wilke went to the plaintiff's place of business and purchased merchandise to the amount of $74.15, and tendered to the defendants in payment thereof the said check indorsed by him under the name of 'Herman Huickle;' and without making inquiry of the said Wilke as to how he obtained the said check, and without the said Wilke being known to the plaintiff or its agent, who made the sale of the said merchandise, and without his being identified to plaintiff or its said agent, plaintiff, through its said agent, accepted the said check, and delivered to the said Herman Wilke the said merchandise, and gave him the difference of the amount of said check, namely, seventy-four dollars and eighty-five cents ($74.85) in cash.

"*Tenth.* At the time defendants stopped the payment of said check as aforesaid, they did not know that it had been transferred to plaintiff as aforesaid, nor did plaintiff know the circumstances under which the said Wilke had obtained the same from defendants, nor that payment thereof had been stopped by them, nor that he was not Herman Heckle or Herman Huickle.

"*Eleventh.* After receiving said check, and upon the same day, plaintiff presented the same to the said Mullanphy Savings Bank and demanded payment thereof, which was refused in pursuance of said directions given by defendants to the said bank not to pay the same.

"*Twelfth.* Thereupon, the plaintiff procured the arrest of the said Wilke and recovered back from him

a part of the merchandise sold by it to him as aforesaid, aggregating in value the sum of thirteen dollars ($13), and, in addition, seventy-four dollars and eighty-five cents ($74.85) in cash, but retained possession of the check, but not because the plaintiff was unknown to the bank.

"*Thirteenth.* If the plaintiff is entitled to recover from the defendants on the foregoing statement of facts, it is entitled to recover the sum of sixty-one dollars and fifteen cents ($61.15)."

There is but one question presented, and that is, were the defendants justified in countermanding the payment of the check? If the check was a non-negotiable instrument, or if the plaintiff was not a *bona fide* holder for value, the judgment must be affirmed.

In this state bills of exchange, if made payable to the order of the payee or to|bearer, are negotiable by the law merchant. Promissory notes drawn in the same way, and expressed to be for value received, are made negotiable by statute. Revised Statutes, 1889, sec. 733. It is also the law of this state that no instrument except a bill of exchange is negotiable, unless it appears on its face to have been issued for value received. *Lowenstein v. Knopf*, 2 Mo. App. 159. This is not controverted by counsel, but it is argued that the check, although not . containing the words, value received, is negotiable, because it possesses all of the characteristics of an inland bill of exchange, and is, in legal effect, such a bill. We cannot agree to this. Although checks and bills of exchange possess several incidents common to both, yet.there are many radical differences, which, in the eye of the law, render them different instruments. A check may be defined to be an order to pay the holder a sum of money at the bank on *presentment of the check and demand of the money.* A bill of exchange has been defined to be a written

order or request by one person to another for the *payment* of a particular sum of money at a specified time *absolutely and at all events* to the person named in the bill as payee. *Luff v. Pope*, 5 Hill, 413. Now, as to the different characteristics of the two instruments. An ordinary bank check is payable on *presentation and demand*, and, therefore, under the common law and the statute, there could be no days of grace (Revised Statutes, 1889, sec. 736); whereas a bill of exchange may be, and generally is, made payable at some specified future time, or at some future day after its presentation. Again, the drawer of a check remains the principal debtor, while the drawer of a bill occupies the position of a surety or guarantor. *Morrison v. McCartney*, 30 Mo. 183. This makes a different degree of diligence in the presentation for payment in order to hold the drawers in case of non-payment. The drawer of a check is not released by delay in presenting the check for payment, unless the drawer, if compelled to pay, would suffer loss on account of the delay, as by the failure of the bank, or unless the demand has been so unreasonably protracted as to warrant the presumption or inference that he has made the check his own. *Morrison v. McCartney, supra*. On the other hand, the contract of the drawer of a bill of exchange is that the drawee rests under no legal disabilities, and may legally accept the bill; that we will accept it on proper presentation, and pay it at maturity; and that, if the payee fails to do so, he (the drawer) will pay the amount of the bill to the legal holder *provided he has due notice of the dishonor*. *Luff v. Pope*, 5 Hill, 413; *N. Y. Bank v. Gibson*, 5 Duer. 575; *Harris v. Clark*, 3 N. Y. 93.

Again the death of the drawer of a check revokes the authority of the drawee to pay, because the drawer remains the principal debtor and the banker is but his

agent; whereas the death of the drawer in a bill of exchange has no such effect as to the holder and drawee of the bill. 1 Morse on Banks & Banking, sec. 380.

In the case of *Bank v. Bank*, 30 Mo. App. 271, this court decided that, while it may be conceded that bank checks possess several of the incidents of an inland bill of exchange, yet they were not bills of exchange; citing *Matter of Brown*, 2 Story, 502; *Bank v. Bank*, 10 Wall. 647; *Espy v. Bank*, 18 Wall. 604, and in further support of the position the case of *Conroy v. Warren*, 3 Johns. Cases, 259, was cited, which held that a bank check was not within the act of congress of July 6, 1797, requiring "foreign or inland bills of exchange, promissory notes or other notes for the security of money" to be stamped.

In opposition to the views expressed, the plaintiff relies on the cases of *St. John v. Homans*, 8 Mo. 382, and *Ivory v. Bank*, 36 Mo. 475. In the *St. John case* Homans, the drawer of the check, defended on the ground that the plaintiff was negligent in not presenting the check for payment, by reason of which a loss would occur to him, if he was forced to pay the amount of the check. In the course of the opinion, Judge Scott, by way of argument, suggested that the weight of authority was to the effect that the degree of diligence in the presentation of a check was the same as that imposed by law upon the holder of a bill of exchange. In that connection the learned judge made use of this language: "It must be confessed, that the inclination of the authorities tends to the support of the principle, that bills of exchange and checks are alike in all respects, and that the holder of a check is bound to the same diligence as the payee or indorsee of a bill of exchange. Without a specific reference to the authorities maintaining the different views above set

forth, it will be sufficient to refer to the case of *Harker v. Anderson*, 21 Wend. 372, as containing all the learning on this question. The opinion of the laborious and enlightened judge, therein delivered, contains a review of all the American and English authorities, and an effort is made to show that they may be reconciled in support of the principle for which he contended, that the analogies between bills and checks were perfect and without exception.'' A reading of the opinion will show that the non-liability of the defendant was not made to rest on the failure of St. John to present immediately the check for payment, but upon the well-recognized principle that the evidence disclosed that Homans would suffer an actual loss, if compelled to pay, and that such loss would have been avoided had the check been presented on the day it was given or the day thereafter. Therefore, the discussion in reference to the legal characteristics of a check and a bill of exchange and their similarity must be regarded as *dicta*. Besides, the supreme court in a subsequent opinion (*Morrison v. McCartney, supra*), holds that the weight of authority was not as stated by Judge Scott, but was to the contrary, and that the case of *Harker v. Anderson, supra*, had not been sustained.

The other case (*Ivory v. Bank, supra*) was an action for negligence for failing to make presentment and protest of an instrument in the form of a bank check, but payable at a future day. The instrument was presented for payment on the day it fell due, and was protested for non-payment. Judge LOVELACE, who delivered the opinion of the court, held that the instrument was a bill of exchange, and was entitled to three days of grace. The court was led to this conclusion in all probability by reason of the general rule requiring bank checks to be made payable on presentation. The

weight of authority elsewhere is that a check on a bank, which is made payable at a future day, is none the less a check. It is only entitled to grace because it is made payable at a future day, and in this respect only is it different from an ordinary check. For a discussion of the subject see 1 Morse on Banking, sec. 386. The practical effect of this decision is to compel the patrons of banks, who may for any reason wish to postpone the payment of their checks, to post-date them instead of making them payable on a future day. It is, therefore, plain that neither one of the cases relied on by the plaintiff is any authority for his side of the question.

Our conclusion is that an ordinary check, such as we have here, is not a negotiable instrument in the broad sense which would protect a transferee, when it was found that it had been fraudulently procured. But it is *quasi* negotiable, like certificates of stock in a corporation, or a certificate of deposit in a bank.

It will not be necessary to notice the other question argued in the briefs. Our decision concerning the negotiability of the check is decisive, and leads necessarily to an affirmance of the judgment. In this opinion Judge ROMBAUER concurs. Judge THOMPSON, who dissents, is of the opinion that the decision is opposed to that of the supreme court in the case of *St John v. Homans, supra*. The case will, therefore, be certified to the supreme court for final determination.

THOMPSON, J. *(dissenting).*—Being of opinion that the doctrine of this case is opposed to the doctrine of the supreme court with reference to the nature of bank checks in *St. John v. Homans*, 8 Mo. 382, and *Ivory v. Bank*, 36 Mo. 475, and also in view of the obvious importance to the commercial community of the ques-

tion involved, I have asked the court to transfer this case to the supreme court, under the constitutional mandate, for final determination. I wish merely to add that, while I do not feel clear that the majority of the court are wrong in the conclusion at which they have arrived, I am nevertheless satisfied that the two decisions above referred to have led the business community of this state into the notion that a bank check payable to a person named, or to his order, or payable to the bearer, possesses the negotiable qualities of a bill of exchange, in the sense which cuts off any inquiry into the equities of the drawer when sued upon the check by one who has taken it in good faith for value, and who has not lost his rights by reason of his own negligence or other fault. Bank checks have become such general instruments of commerce, not only as a means of paying local debts, but also as a means of paying debts due to distant creditors, that I believe it would be very beneficial to commerce to carry the doctrine of the two cases above referred to to its logical conclusion by declaring them to possess the same immunity, in the hands of *bona fide* purchasers for value, as that which attaches to an inland bill of exchange. I am persuaded that it is the general understanding of business men that they do possess the same immunity, and that, by reason of this understanding, they pass from hand to hand as other negotiable instruments do, and play a very important part in effecting the exchanges of the country before finally being presented for payment.

In the little time which I have had to search the books with reference to this question, I have found three cases which point to the conclusion above stated in regard to the negotiable qualities of bank checks, and which are opposed to the conclusion at which my brethren have arrived. In the opinion in the case of *Turnbull v. Bowyer*, 40 N. Y. 456; s. c., 100 Am. Dec. 523,

the reasoning of the court puts a bank check on the footing of other commercial paper, though the case involved a different question from that presented in the case before us. The opinion of the supreme judicial court of Massachusetts, in *Robertson v. Coleman*, 141 Mass. 231; s. c., 55 Am. Rep. 471, proceeds on the same view of the negotiable character of a bank check, and seems to treat it as a settled question, though the point which was really discussed related to the validity of a check made payable to an individual personating the name of another.

The case of *Marsh v. Small*, 3 La. Ann. 402, seems to be a strong case against the conclusion of the majority of the court in this case, though the decision may possibly have been influenced by provisions of the civil code of that state which are not referred to in the opinion. That case, somewhat like this, was an action against the drawer of a check, payable to the bearer, by one who claimed to have been a *bona fide* purchaser of it for value. It appeared that the defendant drew the check and delivered it to the bearer, in whose favor it was drawn, soon after which it was lost by the bearer. The bearer then immediately stopped its payment at the banking-house on which it was drawn, and gave public notice of its loss. A *stranger*, who had evidently found the check, transferred it to a merchant in payment for some goods which he had purchased, and, as in this case, received the difference in cash. This merchant brought suit against the drawer of the check and recovered, and the judgment was affirmed. No question was discussed as to the negotiability of the check; but the only question discussed was whether the plaintiff, in so receiving it, had acted negligently as a merchant so as to take him out of the category of *bona fide* purchasers for value.

The court said: "No negligence had been disclosed from which bad faith can be inferred; and, in such cases, the holder is to be protected, although the note or check may have been lost or stolen," citing Story on Promissory Notes, secs. 197, 382.

I, therefore, incline to think that, for the purposes under consideration, a bank check ought to be regarded as an inland bill of exchange, payable at sight, and for that reason I am of opinion that the plaintiff ought to recover in this case.